Charles **ROBERTSON**, Appellant–
Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 65A01–0703–CR–158.

Court of Appeals of Indiana.

Dec. 10, 2007.

Rehearing Denied Feb. 6, 2008.

Beth McFadin Higgins, Mt. Vernon, IN, Attorney for Appellant.

Stephen R. Carter, Attorney General of Indiana, Indianapolis, IN, Arturo Rodriguez, II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBERTSON, Senior Judge.

### STATEMENT OF THE CASE

Appellant–Defendant Charles Robertson appeals his convictions for dealing in meth-

amphetamine, a Class B felony, and possession of chemical reagents or precursors with intent to manufacture, a Class D felony. We affirm in part, reverse in part, and remand.

## ISSUES

Robertson raises three issues, which we restate as:

I.    Whether the trial court's admission of photographs of opened containers and their labels into evidence was harmless error;

II.   Whether the evidence is sufficient to support Robertson's convictions; and

III.  Whether Robertson's convictions violate the prohibition against double jeopardy.

## FACTS AND PROCEDURAL HISTORY

On May 12, 2006, Posey County Sheriff's Deputies John Montgomery and Mark Saltzman responded to a dispatch of two people hunting artifacts on a farm without permission. Upon his arrival, Deputy Montgomery discovered an unattended black Toyota truck parked in the middle of the roadway. The deputy decided to have the truck towed, and Deputies Saltzman and Kenneth Rose conducted an inventory search of the truck. During the inventory, the deputies found items associated with the red phosphorous method of manufacturing methamphetamine, as well as items associated with the packaging and ingestion of methamphetamine. Specifically, the deputies found over 500 matchbook covers that contained the matches but had the strike plates, which contain red phosphorous, removed; matchbook covers that had the matches and strike plates removed; three heat source canisters-one of which was opened and the other two still sealed and in shrink wrap; a used coffee filter; baggies with the corners cut; a

butane lighter; and aluminum paper with burn mark residue. The deputies also found an application for title for the vehicle that listed Robertson and Joseph Wright as the owners and the address as 9625 Smith Diamond Road in Mount Vernon. The deputies ran a title search of the truck, which indicated that truck was registered to Robertson and Wright and showed their address as 9625 Smith Diamond Road.

The deputies went to the Smith Diamond Road house, which was an elevated river camp, and upon approaching the front door, noticed an opened trash bag containing boxes of ephedrine and a hydrochloric gas ("HCL") generator. The deputies then obtained a search warrant for the house. Upon execution of the search warrant, the deputies discovered various items associated with the red phosphorus method of manufacturing methamphetamine, including several HCL generators; cases of unopened matchbooks; matchbook covers that had no matches stapled to them but contained strike plates; two bags of matchbooks with the strike plates missing; two unopened boxes of nasal decongestant containing pseudoephedrine hydrochloride, several opened boxes of nasal decongestant and empty blister packs; an unopened bottle of hydrogen peroxide; an empty bottle of hydrogen peroxide; an unopened gallon can of acetone; new camping-sized tanks of propane fuel; an opened gallon can of camping fuel; an unopened heat source canister; a full aerosol can of De-Icer, which contained methyl alcohol; an empty bottle of Heet; an opened container of tincture of iodine; an opened container of drain cleaner; two opened or empty gallon bottles of muriatic acid; an opened container of salt; electric hot plates; used coffee filters; a glass condenser tube with plastic tubing; boxes of baggies; baggies with the corners cut; digital scales; a

butane torch; gloves; glass tubes; glass drug paraphernalia pipes; and numerous glass Pyrex dishes and jars, some of which contained various colors of liquids that were not tested. Hanging on the kitchen wall, the deputies also saw a sign that read:

DANGER
KEEP LIGHTS AND
FIRES AWAY
ANHYDROUS AMMONIA

State's Exhibit 106. The deputies did not find any finished methamphetamine at the house, but they did recover Robertson's fingerprints on some of the glass jars found in the house.

Three days later, on May 19, 2006, Deputy Montgomery returned to the Smith Diamond Road residence after receiving information that Robertson and Wright were there. The deputy arrested Robertson, who told the deputy that "he was tired of running and ... "glad he got caught" and that he "wanted to take a bath." Transcript at 38. The State charged Robertson with Count 1, dealing in methamphetamine, a Class B felony; Count 2, possession of chemical reagents or precursors—specifically, pseudoephedrine hydrochloride, iodine, sodium hydroxide, and hydrogen peroxide—with intent to manufacture a controlled substance, a Class D felony; Count 3, maintaining a common nuisance, a Class D felony; and Count 4, using private land without consent, a Class C misdemeanor.

A jury trial was held in February 2007. Prior to trial, Robertson filed a motion in limine to exclude photographs of any empty or opened containers and argued that they were hearsay and should be excluded from evidence. On the morning of trial, the trial court denied Robertson's motion to exclude the photographs.

During trial, Robertson objected to the following State's exhibits: Exhibit 17, the one opened and two unopened, shrink-wrapped heat source canisters; Exhibit 47, a photograph of a label from an opened container of salt; Exhibit 54, a photograph of a label from an opened container of tincture of iodine; Exhibit 55, a photograph of a label from an opened container of drain cleaner, which showed that it contained sodium hydroxide; Exhibits 67 and 67A, photographs of a label from an opened container of muriatic acid, which showed that it contained hydrogen chloride; Exhibit 77, a photograph of an empty bottle of hydrogen peroxide; Exhibit 78 and 79, photographs of a label from an unopened container of hydrogen peroxide; Exhibit 91, a photograph of a label from an opened container of camping fuel; Exhibits 103, 115, 116, 117, 119, and 120, several opened boxes of nasal decongestant containing pseudoephedrine hydrochloride and empty blister packs; Exhibits 123 and 123A, photographs of a label from an opened container of muriatic acid, which showed that it contained hydrochloric acid; and Exhibits 127 and 128, photographs of a label of an empty bottle of Heet, which showed that it contained methyl alcohol. Robertson argued that these exhibits were hearsay and did not meet the hearsay exception under Indiana Evidence Rule 803(17).[1] The trial court overruled Robertson's objections to each of these exhibits and admitted them into evidence.

Also during the trial, Deputy Rose testified that based on his training and experience, the items recovered from Robert-

---

1. Robertson also raised a hearsay objection to Exhibit 56, a photograph of a full can of acetone, and Exhibit 134, a manufacturing data sheet from the manufacturer of the matchbooks that showed that the strike plates contained red phosphorous, but he does not challenge these exhibits on appeal. *See* Appellant's Brief at 8 n. 2.

son's truck and house indicated an "active clandestine methamphetamine laboratory" using the red phosphorus method. Transcript at 109. Deputy Saltzman also opined that methamphetamine was actively being manufactured at the Smith Diamond Road house based on the items found in the house associated with the different steps of manufacturing, including the HCL generators and glass jars that contained bi-level liquids. When Deputy Saltzman testified, he explained the various steps of the red phosphorus method of manufacturing methamphetamine and used a Power Point presentation as a demonstrative exhibit to explain the steps. Robertson objected to Deputy Saltzman's use of the Power Point because it contained photographs of exhibits to which he had already objected to as hearsay. Robertson also argued that it was misleading and not relevant. The trial court overruled Robertson's objection. Robertson then asked the trial court to instruct the jury that they were not to consider the Power Point photographs as substantive evidence of manufacturing, and the trial court denied Robertson's request.

Following the State's presentation of evidence, Robertson moved for directed verdict on Counts 1 through 3. The trial court granted a directed verdict on Count 3—the maintaining a common nuisance charge—and denied Robertson's motion on the dealing in methamphetamine and possession of precursors charges. The jury found Robertson guilty of dealing in methamphetamine and possession of chemical reagents or precursors with intent to manufacture but not guilty of using private land without consent. The trial court sentenced Robertson to an aggregate term of ten years. Robertson now appeals his convictions.

## DISCUSSION AND DECISION

Robertson first argues that the trial court abused its discretion by admitting photographs of opened containers and their labels into evidence. Specifically, Robertson contends that Exhibits 17, 47, 54, 55, 67, 67A, 77, 78, 79, 91, 103, 115, 116, 117, 119, 120, 123, 123A, 127, and 128 constituted inadmissible hearsay and that they did not meet the "Market Reports, Commercial Publications" hearsay exception under Indiana Evidence Rule 803(17).

■ The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *Hill v. State*, 825 N.E.2d 432, 435 (Ind.Ct.App.2005). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is not admissible at trial unless it fits within some exception to the hearsay rule. Ind. Evidence Rules 801 and 802. The hearsay exception at issue in this case, Indiana Evidence Rule 803(17), provides the following are not excluded by the hearsay rule: "Market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations."

Our Indiana Supreme Court addressed this hearsay exception in *Reemer v. State*, 835 N.E.2d 1005 (Ind.2005), and our Court addressed the exception in *Forler v. State*, 846 N.E.2d 266 (Ind.Ct.App.2006). In *Reemer*, the State sought to prove that the defendant possessed pseudoephedrine by introducing labels on empty boxes of nasal decongestant that listed pseudoephedrine hydrochloride as an ingredient as well as

the unopened blister packs that were originally in these boxes. The *Reemer* Court noted that federal and state regulations require that drug labels be accurate and that the general public routinely relies upon the mandatory labeling to assure that the drugs are as they are represented to be by the label. *Reemer*, 835 N.E.2d at 1008–09. Accordingly, the Court held that "labels of commercially marketed drugs are properly admitted into evidence under the exception provided by Evidence Rule 803(17) to prove the composition of the drug." *Id.* at 1009. The *Reemer* Court also explained that the fact that the nasal decongestant tablets were in the original unopened blister packs was "sufficient to establish that the contents remained as the manufacturer packaged them[,]" thereby proving that the defendant possessed pseudoephedrine hydrochloride by possessing the nasal decongestant blister packs. *Id.*

In *Forler*, we explained that *Reemer* holding and the Court's discussion of the hearsay exception in Evidence Rule 803(17) applied to other types of product labels in addition to commercially marketed pharmaceuticals. *Forler*, 846 N.E.2d at 268. In *Forler*, the State sought to prove that the defendant possessed methamphetamine precursors—ether and sulfuric acid—by introducing labels on a starting fluid can and a Liquid Fire bottle, respectively. *Id.* at 267. We noted that both the starting fluid can and the Liquid Fire bottle contained warnings regarding the danger associated with those products, and we concluded that "is permissible to assume that where a product label warns consumers that it contains dangerous ingredients, the general public reasonably relies upon the accuracy of such warnings." *Id.* at 270. Accordingly, we determined that the first foundational requirement of *Reemer* had been met.

We then noted that the *Reemer* Court "seem[ed] to have placed a second foundational requirement for the admissibility of a product label as evidence that the defendant possessed an ingredient listed on the label." *Id.* We explained that this second requirement was that there needed to be "some evidence that the contents of the product remained as the manufacturer packaged them" or "[s]tated another way, there must be some evidence that at the time the police seized a container, the contents of the package or container where the label is placed are the original contents." *Id.* We commented that this foundational requirement "ma[de] sense, because it is conceivable that the contents could be altered or replaced after opening of the package or container." *Id.*

In reviewing this second requirement, we noted that both the starting fluid can and the Liquid Fire bottle were neither new nor unused when seized by the police. We determined that because the starting fluid can, which was an aerosol-type can, could not be readily opened or readily replaced with other contents, there was a "sufficient foundational basis for concluding that the starting fluid can still contained the original contents as packaged by the manufacturer at the time it was seized by law enforcement." *Id.* We explained that the Liquid Fire bottle, which was only half-full when seized by police and had a screw-off top, "present[ed] a more difficult issue" because the contents could have easily been replaced with another substance. *Id.* at 270–71. We did not, however, determine if there was a sufficient foundational basis for the admission of the Liquid Fire label as proof that the defendant possessed sulfuric acid because any possible error in the admission of such evidence was harmless error. *Id.* at 271. We explained that based on the fact that the defendant did not challenge the evidence that she possessed pseu-

doephedrine and based on the proper admission of the starting fluid can label that showed that she possessed ether, any error in the admission of the Liquid Fire bottle did not affect the defendant's substantial rights because there was evidence to support her conviction of possessing two methamphetamine precursors with intent to manufacture. *Id.*

■ The State concedes that labels constituted hearsay because they were admitted to prove the truth of the matter asserted, i.e., to prove that the various containers contained the ingredients listed. The State also seemingly concedes that all but two of the challenged exhibits do not meet the hearsay exception under Indiana Evidence Rule 803(17) because they were opened and do not meet the second foundational requirement of *Reemer*, which requires some evidence that the contents of the product remained as the manufacturer packaged them.[2] The State correctly contends that the photographs of the unopened bottle of hydrogen peroxide (Exhibits 78 and 79) and the two unopened, shrink-wrapped heat source canisters (Exhibit 17) were properly admitted under the exception in Rule 803(17) be-

cause they were in the same condition as when the manufacturer packaged them. The State, however, asserts that even if the remaining exhibits were erroneously admitted, such error was harmless.

■ Errors in the admission of evidence, including hearsay, are to be disregarded as harmless unless they affect the substantial rights of a party. Ind. Trial Rule 61; *Sparkman v. State,* 722 N.E.2d 1259, 1263 (Ind.Ct.App.2000). In determining whether error in the introduction of evidence affected a defendant's substantial rights, we must assess the probable impact of the improperly admitted evidence upon the jury. *Id.* When there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction or where the offending evidence is merely cumulative of other properly admitted evidence, the substantial rights of the party have not been affected, and we deem the error harmless. *Smith v. State,* 839 N.E.2d 780, 784 (Ind.Ct.App.2005).

■ Assuming without deciding that the remaining exhibits did not meet *Reemer's* second foundational requirement,[3] we

**2.** Robertson did not challenge the first foundational requirement of *Reemer* at trial and does not do so on appeal.

**3.** We question whether *Reemer's* second foundational requirement applies to evidence that is introduced to prove a charge other than a possession of a precursor charge, such as dealing methamphetamine by manufacturing. In *Forler,* we noted that the *Reemer* Court "seem[ed] to have placed a second foundational requirement for the admissibility of a product label as evidence that the defendant *possessed* an ingredient listed on the label." *Forler,* 846 N.E.2d at 270 (emphasis added). To be sure, in both *Reemer* and *Forler,* the defendants were convicted only of possession of precursors, and the Courts in those cases reviewed the hearsay exception under Rule 803(17) against the backdrop of such a possession of precursors conviction. In *Forler,*

we commented that this second foundational requirement "ma[de] sense, because it is conceivable that the contents could be altered or replaced after opening of the package or container." *Id.* Indeed, the second foundational requirement does make sense when the State seeks to admit an exhibit intended to prove that a defendant *possessed* a precursor indicated on a label. However, for a dealing in methamphetamine by manufacturing charge, where the State is required to prove that a defendant manufactured methamphetamine or was in the process of manufacturing methamphetamine, it does not seem to make sense because the State is trying to prove that the defendant already used the precursors or other items associated with the manufacturing process.

agree with the State that any error in the admission of these exhibits was harmless. First, in regard to the possession of precursors charge, the State charged Robertson with possession of the following precursors: pseudoephedrine hydrochloride, hydrogen peroxide, iodine, and sodium hydroxide. Robertson does not challenge the evidence that he possessed pseudoephedrine hydrochloride,[4] and we have concluded that the trial court properly admitted the unopened bottle of hydrogen peroxide. Indeed, in his reply brief, Robertson acknowledges that these two precursors are sufficient to overcome the harmless error test. *See* Appellant's Reply Brief at 2. Thus, even when excluding any evidence regarding Robertson's possession of iodine and sodium hydroxide, there was substantial evidence that he possessed two precursors with intent to manufacture.

■ Next, in regard to the dealing in methamphetamine charge that was based on manufacturing, we also conclude that any error in the admission of the challenged exhibits was harmless. Even without the challenged exhibits, the State introduced evidence that deputies found numerous items associated with the red phosphorous method of manufacturing methamphetamine, as well as items associated with the packaging and ingestion of methamphetamine, in Robertson's truck and house, and two deputies testified that the items found indicated that Robertson was actively manufacturing methamphetamine. The items found by the deputies include: a copious amount of matchbook covers that contained the matches but had the strike plates, which contain red phosphorous, removed; unopened boxes of nasal decongestant containing pseu-

doephedrine hydrochloride; hydrogen peroxide; HCL generators; an unopened gallon can of acetone; new camping-sized tanks of propane fuel; an unopened heat source canister; a full aerosol can of De-Icer, which contained methyl alcohol; electric hot plates; used coffee filters; a glass condenser tube with plastic tubing; boxes of baggies; baggies with the corners cut; digital scales; a butane torch; gloves; glass tubes; glass drug paraphernalia pipes; and numerous glass Pyrex dishes and jars, some of which contained various colors of liquids. Furthermore, many of the challenged exhibits were merely cumulative of the above properly admitted evidence. Accordingly, we conclude that any error in the admission of the challenged exhibits was harmless error.

Robertson next argues that the evidence was insufficient to support his convictions for dealing in methamphetamine and possession of chemical reagents or precursors with intent to manufacture. We will review each in turn.

■ When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

■ At the time of Robertson's crimes, Indiana Code § 35–48–4–1(a)(1) provided that a person who knowingly or

---

4. The State showed that Robertson possessed pseudoephedrine hydrochloride by introducing Exhibits 86 and 87—a photograph of two unopened boxes of nasal decongestant and the actual boxes themselves, respectively—and Robertson did not object to the admission of these exhibits.

intentionally manufactures methamphetamine commits dealing in methamphetamine, a Class B felony.[5] "Manufacture" is defined, in pertinent part, as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis." Indiana Code § 35–48–1–18. The manufacturing statute, Indiana Code § 35–48–1–18, does not require "that the process must be completed or that there must actually be a final product before it applies." *Bush v. State*, 772 N.E.2d 1020, 1023 (Ind.Ct.App.2002), *trans. denied.*

■ Robertson contends that the evidence was insufficient to support his dealing methamphetamine by manufacturing conviction because no methamphetamine was found and there was no evidence that the manufacturing process had begun. We cannot agree.

Despite the fact that there was no evidence of finished methamphetamine, as noted above, deputies found several items used in the manufacture of methamphetamine in Robertson's truck and house, including numerous matchbook covers that had the strike plates removed, boxes of nasal decongestant containing pseudoephedrine hydrochloride, hydrogen peroxide, HCL generators, acetone, tanks of propane fuel, a can containing methyl alcohol, electric hot plates, used coffee filters, a glass condenser tube with plastic tubing, a butane torch, gloves, glass tubes, glass

drug paraphernalia pipes, boxes of baggies, baggies with the corners cut, digital scales, and numerous glass Pyrex dishes and jars, some of which contained various colors of liquids. The State also presented evidence explaining how these ingredients and items found are commonly used in the manufacture of methamphetamine. Deputies Rose and Saltzman testified that the items recovered indicated that Robertson was actively manufacturing methamphetamine using the red phosphorous method. Deputy Saltzman explained that when using the red phosphorous method to manufacture methamphetamine, one of the initial steps is to obtain red phosphorous, which could be obtained from match strike plates,[6] and to soak the strike plates in alcohol or acetone. Deputy Saltzman opined that methamphetamine was actively being manufactured at the Smith Diamond Road house based on the items found in the house associated with the different steps of manufacturing, including the HCL generators and glass jars that contained bi-level liquids.

Based on the items found and the deputies' testimony, we conclude that the State presented evidence of probative value from which a reasonable trier of fact could have determined that Robertson was in the process of manufacturing methamphetamine. Thus, the evidence was sufficient to support Robertson's conviction for dealing in methamphetamine. *See, e.g., Bush*, 772 N.E.2d at 1023 (concluding that, despite the fact that no finished methamphetamine was found, the evidence was sufficient to establish that the defendant was in the

---

5. Robertson committed his crimes in May 2006, and Indiana Code § 35–48–4–1(a)(1) was amended, effective July 1, 2006, to omit any references to methamphetamine. *See* P.L. 151–2006, Sec. 22. Currently, the statute pertaining to dealing in methamphetamine is found under Indiana Code § 35–48–4–1.1, which was added by P.L. 151–2006, Sec. 23.

6. The State also introduced a manufacturing data sheet from the manufacturer of the matchbooks that showed that the strike plates contained red phosphorous. *See* State's Exhibit 134. Robertson objected to this exhibit at trial but does not challenge it on appeal.

process of manufacturing methamphetamine where the police found several items used in the manufacture of methamphetamine and the State's expert testified that the defendant had an "in process lab"); *see also Moore v. State*, 869 N.E.2d 489, 492 (Ind.Ct.App.2007) (concluding the evidence was sufficient to establish that the defendant was in the process of making methamphetamine); *Hill*, 825 N.E.2d at 438 (explaining that the evidence of the items found at the defendant's trailer was sufficient to support the determination that the defendant manufactured methamphetamine even though no finished methamphetamine was found on the premises).

■ We now turn to Robertson's contention that there is insufficient evidence to support his possession of chemical reagents or precursors with intent to manufacture conviction. However, we need not address this sufficiency argument because Robertson also argues that his convictions violate the prohibition against double jeopardy under Indiana Code § 35-38-1-6 based on his conviction for possession of chemical reagents or precursors with intent to manufacture being an included offense of dealing in methamphetamine conviction, and the State concedes that Robertson's convictions constitute double jeopardy and that Robertson's possession of precursors conviction should be reversed based on this violation.

■ Indiana Code § 35-38-1-6 provides that if a defendant is charged with an offense and an included offense in separate counts and is found guilty of both counts, "judgment and sentence may not be entered against the defendant for the included offense." Indiana Code § 35-41-1-16 provides, in part, that an "included offense" is an offense that: "(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged[.]" A lesser-

included offense is necessarily included within the greater offense if it is impossible to commit the greater offense without first having committed the lesser offense. *Bush*, 772 N.E.2d at 1023–24; *Iddings v. State*, 772 N.E.2d 1006, 1016 (Ind.Ct.App. 2002), *trans. denied.*

In the companion cases of *Bush* and *Iddings*, we addressed the circumstances under which a defendant's conviction for possession of precursors would or would not be an included offense of dealing in methamphetamine. As we explained in *Iddings*:

> We accept that it is impossible to knowingly or intentionally manufacture methamphetamine without first possessing the chemical precursors of methamphetamine with the intent to make the drug. Methamphetamine cannot be conjured up out of thin air. The sole practical difference between these two offenses is that one may be guilty of possessing chemical precursors with intent to manufacture without actually beginning the manufacturing process, whereas the manufacturing process must, at the very least, have been started by a defendant in order to be found guilty of manufacturing methamphetamine ... [W]hether an offense is included in another within the meaning of [Indiana Code] Section 35-38-1-6 requires careful examination of the facts and circumstances of each case.

772 N.E.2d at 1016–17.

In *Iddings*, there was evidence that the defendant: "(1) had already manufactured methamphetamine and (2) possessed the chemical precursors of methamphetamine with the intent to manufacture more of the drug." *Id.* at 1017. We could not conclude Iddings's possession of chemical precursors of methamphetamine was necessarily a lesser included offense of manufacturing methamphetamine because the evidence permitted the reasonable conclu-

sion that two independent offenses were committed for which Iddings could be separately punished. *Id.* In *Bush,* however, Bush's "conviction for manufacturing methamphetamine was based exclusively on his possession of the precursors of that drug in circumstances suggesting that he was in the process of manufacturing it" and there was no evidence that Bush had completed the manufacturing process and had a finished methamphetamine product. *Bush,* 772 N.E.2d at 1024. Under those facts and circumstances, we determined that "the same evidence" established Bush's manufacturing of methamphetamine and his possession of precursors with intent to manufacture and held that his conviction for possession of precursors had to be reversed in accordance with Indiana Code § 35–38–1–6. *Id.* at 1025.

Here, as in *Bush,* there was no finished methamphetamine product found. Robertson's possession of precursors—pseudoephedrine hydrochloride and hydrogen peroxide—is necessarily included in his conviction for dealing in methamphetamine. Robertson could not have been in the process of manufacturing methamphetamine without possessing the precursors. In accordance with Indiana Code § 35–38–1–6, Robertson's conviction for possession of precursors must be reversed. *See Bush,* 772 N.E.2d at 1024–25; *see also Moore,* 869 N.E.2d at 493. Therefore, we remand this case to the trial court with instructions to vacate Robertson's conviction for possession of chemical reagents or precursors with intent to manufacture.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and BRADFORD, J., concur.