**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 28 2014, 10:06 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**THOMAS W. VANES**
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CHRISTOPHER M. GALVAN,              )
                                   )
    Appellant-Defendant,           )
                                   )
          vs.            )       No. 45A05-1308-CR-387
                                   )
STATE OF INDIANA,                   )
                                   )
    Appellee-Plaintiff.            )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-1202-FA-5

**February 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Christopher M. Galvan appeals his conviction of Child Molesting,[1] a class C felony. Galvan presents the following restated issue for review: Did the trial court commit reversible error in admitting statements of the child victim under the excited-utterance exception to the hearsay rule?

We affirm.

The facts favorable to the conviction are that beginning sometime around August or September 2011, Galvan lived with his father, Mark Galvan, and his father's wife, Kathleen Dillon, along with their children and stepchildren. Among those children was seven-year-old F. Mark and Kathleen owned their own business, which caused them to be absent from the home on a regular basis. During their absences, Galvan would babysit Kathleen's children. He also drove them to various activities, such as school and summer camp. Toward the end of 2011, Kathleen noticed that F. did not want to stay at home when Kathleen and Mark were not there. She would ask to be allowed to accompany Kathleen, and "was very adamant about not wanting to stay home any more, but she never said why." *Transcript* at 89.

There had been several incidents when the children complained that Galvan was being mean to them or bullying them. Kathleen and Mark had told Galvan not to strike the children, and instead to use some other form of discipline. On or about February 6, 2012, while Galvan was away staying with his mother for three or four days, Kathleen asked F. if Galvan had been "bothering" her or "done anything to her", referring to the aforementioned

---

[1] Ind. Code Ann. § 35-42-4-3(b) (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.).

2

corporal punishment. *Id.* at 90. F.'s first response was, "What if I said no?" *Id.* Kathleen responded that that would be good. F. then replied, "What if I said yes?" *Id.* Kathleen responded that that would be "very bad." *Id.* At that point, F. whispered in Kathleen's ear that Galvan had kissed her. Because some of the other children were in the room at the time, Kathleen moved F. into a bedroom to continue the discussion. Once in the bedroom, F. told Kathleen that Galvan had kissed and touched her. She related that he had removed her pants and rubbed his "private part" on her "bottom", causing it to "hurt". *Id.* at 107.

Kathleen called police and reported what F. had told her. F. was taken to the hospital, where she underwent a physical examination by Dr. Maria Cole. Following the examination, Dr. Cole made the following notations:

> Patient told mom she was sexually assaulted by stepbrother (22 yr old) sometime last week. Police report made by mother today & male is not in pts home at this time. Patient told me 22 yr old stepbrother "put his penis by her bottom & pushed his penis & rubbed her skin near anal area." He also allegedly told her to cover his penis with her mouth but she was reluctant & he did not force her. He apparently told her that if she told anyone that he would not be able to live in her home any longer. She admits she was scared & did not tell her mother of events until today.

*Exhibit Volume*, Exhibit 1. During the examination, Dr. Cole did not observe signs of trauma to F.'s anus or body.

Galvan was charged with two counts of child molesting, one as a class A felony (alleging deviate sexual conduct) and one as a class C felony (alleging touching or fondling with the intent to arouse or satisfy his sexual desires). A jury trial was held in June 2013. At trial, F. testified that Galvan had touched or fondled her multiple times in several locations, including in vehicles and several different places in their home. These incidents typically

3

occurred when Mark and Kathleen were absent from the home or were not present in the vehicle. F. testified that on one occasion Galvan took off her pants and put his "private part" in her "behind." *Id.* at 41-42. She testified that Galvan made her touch his "privates", sometimes moving her hand "back and forth." *Transcript* at 44. She testified that while she was moving her hand in this manner on one such occasion, "icky stuff came out." *Id.* F. testified that she told her mother about the molestations on Super Bowl Sunday, and indicated that the last molestation had occurred the day before.

During Kathleen's direct testimony, she was asked about the prior disciplinary issues involving Galvan and her children, and the onset of F.'s reluctance to be home without her parents. Kathleen also testified, without objection, about her initial discussion with F., i.e., before the two moved into a bedroom after F. disclosed that Galvan had kissed her. The State asked Kathleen about her response to what F. had said and she replied: "I took her to my bedroom because my boys were all in the living room, watching TV and I didn't want them to hear our conversation. So I took her to my bedroom and I had asked her what else had happened to her? And she started telling me things that --." *Id.* at 90. At that point, the trial court sustained Galvan's hearsay objection.

After this, the State questioned Kathleen about F.'s demeanor. Kathleen testified that F. appeared to be "scared" and upset, and began crying. *Id.* at 92. The State asked, "And as she was in this state … what did she tell you?" *Id.* Galvan once again objected on hearsay grounds, to which the State responded that it was seeking to admit the challenged testimony through the excited utterance exception. After entertaining argument on the issue outside the

4

presence of the jury, the court stated, "I'm not sure where the testimony is going. Would you like to proffer some testimony outside of the jury's presence?" *Id.* at 95. Whereupon Kathleen testified about what F. had told her concerning the molestation incidents. She testified that she "flipped out", and started "screaming and yelling for [Mark] that I was gonna kill [Galvan]." *Id.* at 96.

After this proffered testimony, Galvan renewed his objection, arguing that the disputed testimony was "still not even close to excited utterance." *Id.* at 97. In large part, the State's theory was that Kathleen's emotional reaction was a traumatic event that would qualify F.'s subsequent statements to Kathleen under the excited-utterance exception. The trial court apparently agreed with Galvan, and sustained the objection on grounds that the State had not met the foundational requirements for admission of the testimony pursuant to the excited utterance exception.

The question then arose as to whether statements made by F. to Kathleen *before* Kathleen "flipped out" were admissible under the excited utterance exception. The State resumed questioning Kathleen to establish whether this testimony would be permitted. Kathleen testified that before she (Kathleen) lost her composure, F. told her that Galvan had pulled her pants down and penetrated her from behind. At that point, the trial court indicated it would overrule the objection with respect to anything F. told Kathleen prior to Kathleen's emotional outburst. The court explained:

> The three conditions of an excited utterance coming in as substantive evidence, make [sic] it non hearsay is that there is [sic] three requirements and that is a startling event or condition. In this particular case, that would be the revealing of the alleged sexual abuse. A statement that was made while the declarant

5

was under the stress or excitement caused by the event or condition, [F.] testified that the defendant told her that bad things would happen to her, if in fact this ever got revealed and that the statement must relate to the event or condition under the proffered evidence done now, by this witness, taken collectively with the other evidence, the State has met that burden by a preponderance of the evidence that the speaker was under the stress of the startling event or condition. That is the revealing of the alleged sexual abuse, not the sexual abuse itself. And therefore, the objection is overruled anything said up until the point of, as this witness said, "freaking out", will be admissible.

*Id.* at 104-05.

The jury was brought back in and, over Galvan's hearsay objection, Kathleen testified that F. told her Galvan took off F.'s pants and rubbed his private part on her bottom, and it hurt. At the conclusion of trial, the jury found Galvan not guilty of child molesting as a class A felony, but guilty of child molesting as a class C felony.

"Generally, '[a] trial court has broad discretion in ruling on the admissibility of evidence and we will disturb its rulings only where it is shown that the court abused that discretion.'" *Speers v. State*, 999 N.E.2d 850, 852 (Ind. 2013) (quoting *Turner v. State,* 953 N.E.2d 1039, 1045 (Ind. 2011)). For a statement to be admitted as an excited utterance under Indiana Rule of Evidence 803(2), the proponent must establish the following elements: (1) A startling event occurred; (2) the existence of a statement made by a declarant while under the stress of excitement caused by the event; and (3) that the statement related to the startling event. *Fowler v. State*, 829 N.E.2d 459 (Ind. 2005), *cert. denied*, 547 U.S. 1193 (2006) . Ultimately, the issue is whether the statement may be deemed reliable because of its spontaneity and the lack of thoughtful reflection and deliberation. *Id.* "Determining whether a statement constitutes an excited utterance is essentially a factual determination subject to a

6

clearly erroneous standard of review, sometimes described as the functionally equivalent standard of abuse of discretion." *Id*. at 463. Finally, an error in admitting improper hearsay evidence may be disregarded as harmless unless it affected the substantial rights of a party. Ind. Trial Rule 61; *Robertson v. State,* 877 N.E.2d 507 (Ind. Ct. App. 2007). In determining whether error in the introduction of evidence affected a defendant's substantial rights, we must assess the probable impact of the improperly admitted evidence upon the jury. *Robertson v. State,* 877 N.E.2d 507. Where the offending evidence is merely cumulative of other properly admitted evidence, the substantial rights of the party have not been affected, and we deem the error harmless. *Id.*

In the present case, the testimony of which Galvan complains consisted of Kathleen's recounting that F. told her Galvan had taken down F.'s pants and rubbed his private part on her bottom, and that it hurt. We note, however, that Galvan did not object to the admission of Exhibit 1, which was the report completed by Dr. Cole summarizing the results of her examination of F. at the hospital. In this report, Dr. Cole stated that F. told her Galvan "put his penis by [F.'s] bottom & pushed his penis & rubbed her skin near [her] anal area." *Exhibit Binder*, Exhibit 1. Therefore, the purported hearsay evidence provided by Kathleen was merely cumulative of other properly admitted evidence conveying the same information. Accordingly, the admission of Kathleen's testimony as to what F. told her, even if erroneous, did not affect Galvan's substantial rights. The error, if any, was harmless. *Robertson v. State,* 877 N.E.2d 507.

Judgment affirmed.

7

KIRSCH, J., and BAILEY, J., concur.