## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 29 2015, 8:49 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Joel M. Schumm
Ellen N. Pactor, Certified Legal Intern
Indiana University Robert H. McKinney
School of Law Appellate Clinic
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dianna Fargo,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

December 29, 2015

Court of Appeals Case No.
49A02-1504-CR-238

Appeal from the Marion Superior Court

The Honorable William J. Nelson, Judge

The Honorable Shannon L. Logsdon, Commissioner

Trial Court Cause No.
49F18-1311-FD-35194

**Najam, Judge.**

# Statement of the Case

Dianna Fargo appeals her conviction for theft, as a Class D felony, following a bench trial. She raises three issues for our review, namely:

1. Whether the State presented sufficient evidence to support her conviction.

2. Whether the trial court erred in considering inadmissible hearsay evidence.

3. Whether the trial court shifted the burden of proof to Fargo.

We affirm.

# Facts and Procedural History

On February 23, 2013, Latonya Ball, the pet products manager at an Indianapolis PetSmart store, was providing customer service on the sales floor. Ball's duties as a pet products manager included inventory control and loss prevention. While working that day, Ball offered assistance to a customer later identified as Fargo. During a short conversation with Fargo about some of PetSmart's products, Ball noted that Fargo had a shopping cart full of items, including large bags of pet food and cat litter. Ball also noted that Fargo was behaving nervously which Ball knew through her training was a sign of a potential thief.

From that point forward, Ball maintained constant surveillance of Fargo's movements throughout the store. Ball saw Fargo place "a few" items from the

"human" section of the store into her shopping cart. Tr. at 18-19. Ball then observed Fargo walk, with her cart, through the pet care section, past the adoption center, and out the front door of the store without having paid for any of the items in her cart. Ball observed Fargo walk toward a red car in the parking lot and unload the items from her cart into the car. Several PetSmart employees knew Fargo and identified her as the person Ball had seen leaving the store. Ball then called the police. When the police arrived, Fargo had already left the store's parking lot.

[5] The State subsequently charged Fargo with theft. At the March 25, 2015, bench trial, Ball testified that she was unable to identify exactly what items Fargo had allegedly stolen because she could not see every item in Fargo's loaded cart, and she was unable to tell what was stolen through a weekly "inventory count." *Id*. at 24-25. However, Ball testified she had seen Fargo put items from the "human" section of the store into her shopping cart. *Id*. at 18-19. Ball also testified that, after Fargo had left the store, Ball had asked the cashiers whether Fargo had come through their cashier lines and the cashiers had said no. Defense counsel objected to this testimony as hearsay, and that objection was sustained. However, on cross-examination, Fargo's counsel elicited testimony from Ball that Ball had asked the cashiers, including one named Alexis, whether Fargo had gone through their cashier lines. Ball testified that Alexis had said Fargo had not gone through her line, and there was no objection to this statement.

[6] Fargo testified and denied having stolen any items from PetSmart. She testified that, on the day in question, she had checked out and paid in cash for the items with a PetSmart cashier named Deanna, whom Fargo knew from her own previous employment at PetSmart. Fargo had ceased her employment with PetSmart in January 2013. Fargo stated that she did not keep the receipt from her purchases on February 23, 2013.

[7] The trial court found Fargo guilty of theft, as a Class D felony. In reaching this decision, the trial judge noted that she found Ball to be a more credible witness than Fargo. The trial court also stated that Ball's testimony that all of the cashiers said Fargo did not check out with any of them had come into evidence on Fargo's cross-examination of Ball. In particular, the trial court stated as follows:

> And that came out on cross. It was objected to and sustained during direct and then on cross it came out that she did ask those cashiers that and that no one had said that they had you pay anything at their—or had come through their register.

*Id.* at 45. The trial court continued as follows:

> It would seem to me that you've been charged with this crime since December 9th I believe was your initial hearing of 2013, and if you paid and went through somebody's register that you would then present that person to say, Yes, I did pay, if you felt that. Not that you have a responsibility to prove anything to the Court, but if that's your defense that yes, you did pay, and you're wanting to dispute the evidence that someone watched you walk out of the store without paying for anything, that you might have

that person that you seem to know so well come in and say, Yeah. I had her pay at my register.

\* \* \*

[B]ased on the testimony that none of the cashiers said that you went through them [sic]—I have no choice at this point. I find Ms. Ball more credible than I find you today. So I'm going to find you guilty of Theft as charged in Count One.

*Id*. at 45-46, 48. This appeal ensued.

# Discussion and Decision

[8] Fargo argues the State failed to carry its burden of proving she committed theft because there was insufficient evidence that any items were taken from the store. Fargo also contends that the trial court erred by relying on inadmissible hearsay evidence and shifting the burden of proof onto Fargo. We address each of these arguments in turn.

## *Sufficiency of Evidence*

[9] Fargo asserts that the State presented insufficient evidence to support her conviction for theft. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Jackson v. State*, 925 N.E.2d 369, 375 (Ind. 2010). We look only to the probative evidence supporting the judgment and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id*. If there is substantial

evidence of probative value to support the conviction, it will not be set aside. *Id*.

[10] Pursuant to Indiana Code Section 35-43-4-2, to prove Fargo committed theft, the State was required to show that Fargo knowingly or intentionally exerted unauthorized control over PetSmart products with the intent to deprive PetSmart of the value or use of those products. Here, there was evidence that Ball (1) saw Fargo placing PetSmart products into a shopping cart that was already full of other PetSmart products; (2) maintained constant surveillance of Fargo from that point until Fargo left the store; (3) and saw Fargo leave the store with those products without having paid for them. Although Ball could not identify exactly what type of PetSmart products Fargo had stolen, the evidence nevertheless shows that Ball saw Fargo place items from PetSmart's "human" section into an already-full shopping cart and then walk out of the store without paying for those items. Tr. at 18-19. This is sufficient evidence to prove that Fargo knowingly or intentionally exerted unauthorized control over PetSmart items. *Cf. Meehan v. State*, 7 N.E.3d 255, pin (Ind. 2014) (affirming a burglary conviction based on a glove found at a crime scene containing the defendant's DNA).

[11] There is also sufficient evidence that Fargo intended to steal the PetSmart items. Intent to commit a crime may be proven through circumstantial evidence. As we have explained:

> Intent is a mental state, and absent an admission, the [fact-finder] must resort to the reasonable inferences based upon an

examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, there exists a showing or inference of the required criminal intent.

*Germaine v. State*, 718 N.E.2d 1125, 1132 (Ind. Ct. App. 1999), *trans. denied*. The State presented sufficient evidence from which the trial court could infer Fargo's intent to deprive PetSmart of the value or use of items from its store from the evidence that she knowingly or intentionally placed such items in her shopping cart and then left the store without paying for them.[1]

### Reliance on Hearsay Evidence

[12] Fargo argues that the trial court erred in relying on hearsay evidence that had been ruled inadmissible. Fargo correctly points out that she had objected to Ball's testimony that the PetSmart cashiers had told her that Fargo had not checked out with any of them, and the trial court sustained that objection pursuant to Indiana Evidence Rule 802, which prohibits the admission of hearsay unless it falls under one of a few specific exceptions that are not applicable here. But the State responds that Fargo invited any error by eliciting similar hearsay on cross-examination. *See, e.g.*, *Wright v. State*, 828 N.E.2d 904,

---

[1] Fargo claims that there was insufficient evidence that she stole the dog food and other large items that were in her cart before Ball started watching her, as there was no evidence that Fargo had not already paid for those items by the time Ball saw her. However, Ball saw Fargo leave the store with these items in her cart without paying for them, and the trial court found Ball's testimony credible. This is sufficient evidence that Fargo stole those items. Fargo's argument that we find otherwise simply asks us to reweigh the evidence, which we will not do.

907 (Ind. 2005) (holding that, under the doctrine of "invited error," a party may not take advantage of an error that she commits or invites.)

[13] We agree with Fargo that she did not "invite the error" by eliciting that hearsay evidence on cross-examination, as the State claims. The only hearsay evidence that Fargo's counsel elicited in the cross-examination of Ball was testimony that one cashier, Alexis, had told Ball that Fargo did not check out with her. Although Ball reiterated on cross-examination that she did ask all the cashiers whether Fargo had checked out with them, Ball did not testify on cross-examination as to what the cashiers' responses had been. Therefore, the evidence as to what any cashier other than Alexis had said was not "invited" by Fargo on cross-examination and, thus, it remained inadmissible. It was error for the trial court to consider that hearsay evidence.

[14] However, that error was harmless. As explained above, Ball's testimony that she saw Fargo take PetSmart items without paying is, alone, sufficient evidence of theft.

> Errors in the admission of evidence . . . are to be disregarded as harmless unless they affect the substantial rights of a party. Ind. Trial Rule 61; *Sparkman v. State*, 722 N.E.2d 1259, 1263 (Ind. Ct. App. 2000). In determining whether error in the introduction of evidence affected a defendant's substantial rights, we must assess the probable impact of the improperly admitted evidence upon the [fact-finder]. *Id.* When there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction or where the offending evidence is merely cumulative of other properly admitted evidence, the substantial rights of the party have not

been affected, and we deem the error harmless. *Smith v. State*, 839 N.E.2d 780, 784 (Ind. Ct. App. 2005).

*Bennett v. State*, 5 N.E.3d 498, 510 (Ind. Ct. App. 2014) (quoting *Robertson v. State*, 877 N.E.2d 507, 514 (Ind. Ct. App. 2007)), *trans. denied*; *see also* Ind. Trial Rule 61. Here, we know that the trial court relied on the inadmissible hearsay evidence when making its decision because it explicitly said so. However, that hearsay evidence was cumulative of Ball's testimony that she saw Fargo place items in her shopping cart and leave the store with them without stopping at any of the cash registers to pay. Because Ball's eye-witness account is sufficient evidence, alone, to sustain the conviction, any reliance on the inadmissible hearsay was harmless error and cannot provide grounds for reversal. *Id.*

### Burden of Proof

[15] Finally, Fargo argues that the trial court impermissibly shifted the burden of proof from the State to her. Fargo bases this claim on the court's observation that Fargo did not present testimony from Deanna, the PetSmart cashier whom Fargo said she had paid for the PetSmart items. However, Fargo reads too much into the court's statement. The court did not shift the burden of proof to Fargo.

[16] The State always has the burden of proof in criminal cases, and that burden never shifts to the defendant, *see, e.g.*, *Woods v. State*, 939 N.E.2d 676, 678 (Ind. Ct. App. 2010) (citing *Taylor v. State*, 587 N.E.2d 1293, 1301 (Ind. 1992)), *trans. denied*; the trial court acknowledged as much when it stated that Fargo did not

have a responsibility to prove anything to the court. However, once the State has met its burden of proving guilt beyond a reasonable doubt and thus established a prima facie case, the defendant will be found guilty unless she can "revive a reasonable doubt in the [fact-finder's] mind[]" by presenting some evidence to counter the State's case. *Peabody Coal Co. v. Ralston*, 578 N.E.2d 751, 754 (Ind. Ct. App. 1991); *see also Smith v. State*, 266 N.E.2d 216, 218 (Ind. 1971) (holding that, although the burden is on State to prove the guilt of the criminal defendant, and the burden does not shift, the burden of adducing evidence devolves on the defendant after a prima facie case of guilt has been made out). The trial court's observation that Fargo did not present a cashier's testimony to counter the State's case did not shift the burden of proof to Fargo; rather, it merely acknowledged that Fargo did not rebut the State's prima facie case against her. *Cf. Hancock v. State*, 737 N.E.2d 791, 798 (Ind. Ct. App. 2000) (holding it is permissible for the State to comment on the lack of evidence presented by the defense to contradict the State's case).

[17] The evidence was sufficient to support Fargo's conviction for theft, and any erroneous consideration of hearsay evidence by the trial court was harmless error. Moreover, the trial court did not shift the burden of proof to Fargo.

[18] Affirmed.

Riley, J., and May, J., concur.