STATE of Indiana, Appellant
(Plaintiff below),

v.

John LOMBARDO, Appellee
(Defendant below).

No. 38S00–9902–CR–111.

Supreme Court of Indiana.

Nov. 3, 2000.

**654**

Jeffrey A. Modisett, Attorney General of Indiana, Greg Ullrich, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

Robert G. Forbes, Forcum & Forbes LLP, Hartford City, Indiana, Attorney for Appellee.

SULLIVAN, Justice.

Defendant John Lombardo was charged with the unlawful interception of a telephonic communication for secretly tape recording his estranged wife's telephone conversations. The trial court dismissed the charge, finding the Indiana Wiretap Act was unconstitutionally vague because it did not clearly define the conduct prohibited. We hold that Indiana's Wiretap Act is constitutional and that there is no constitutional bar to its application in this case.

### Background

Both federal and state statutes prohibit the use of wiretapping and electronic surveillance except in certain circumstances. *See* 18 U.S.C. §§ 2511–2519 (1988) ("Federal Wiretap Act"); Ind.Code §§ 35–33.5–1–1 through 35–33.5–5–6 (1993) ("Indiana Wiretap Act."). This case arises under the Indiana Wiretap Act but requires reference to the Federal Wiretap Act as well.[1]

On January 16, 1998, the State filed an amended information charging John Lombardo with the unlawful interception of a telephonic communication, a Class C felony, under Indiana Code § 35–33.5–5–5. The State alleged that between October 1996, and March 1997, Lombardo had placed a recording device at the home of his estranged wife, Connie, to intercept and record telephone conversations between her and a third person without the

---

1. This is a case of first impression in Indiana. We have not previously construed the scope of Indiana's Wiretap Act. Previous decisions from this Court and the Court of Appeals construing the Federal Wiretap Act analyzed it prior to passage of Indiana's Act, *see In re Marriage of Lopp*, 268 Ind. 690, 378 N.E.2d 414 (1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1023, 59 L.Ed.2d 76 (1979); *Jacks v. State*, 271 Ind. 611, 394 N.E.2d 166 (1979); *Wells v. Wells*, 489 N.E.2d 972 (Ind.Ct.App. 1986), or construed only the Federal Wiretap Act, *see Hamed v. Pfeifer*, 647 N.E.2d 669 (Ind.Ct.App.1995).

consent of either party. Connie apparently had found a hidden tape recorder wired to the telephones in the home and also heard Lombardo state that he had several tapes of conversations between her and third parties.

On March 2, 1998, Lombardo filed a motion to dismiss the amended information, advancing several arguments but primarily claiming that the Indiana Wiretap Act did not adequately forewarn the conduct prohibited. On December 30, 1998, the trial court granted Lombardo's motion to dismiss the charge, finding the Indiana Wiretap Act unconstitutionally vague on its face and as applied in this case. The State appeals these rulings. This Court has exclusive jurisdiction over this case pursuant to Indiana Appellate Rule 4(A)(8).[2]

### Discussion

In charging Lombardo with the unlawful interception of a telephonic communication, the State acted pursuant to these provisions of the Indiana Wiretap Act:

(a) This section does not apply to a person who makes an interception authorized under federal law.

(b) A person who *knowingly or intentionally* intercepts, a communication in violation of this article commits *unlawful interception*, a Class C felony.

(c) A person who, by virtue of the person's employment or official capacity in the criminal justice system, knowingly or intentionally uses or discloses the contents of an interception in violation of this article commits unlawful use or disclosure of an interception, a Class C felony.

Ind.Code § 35–33.5–5–5 (1993) (emphases added). The statute defines the "intercep-

tion" of a wire or electronic communication as follows:

"Interception" means the *intentional:*

(1) recording of; or

(2) acquisition of the contents of;

a telephonic or telegraphic communication by a person other than a sender or receiver of that communication, without the consent of the sender or receiver, by means of any instrument, device, or equipment under this article. This term includes the intentional recording of communication through the use of a computer or a FAX (facsimile transmission) machine.

*Id.* § 35–33.5–1–5 (emphasis added).

Lombardo contends, and the trial court agreed, that this statutory scheme is unconstitutionally vague in several respects in that "a person of ordinary intelligence is unable to determine the conduct prohibited." Appellee's Br. at 3; *see also* Order of Dismissal at 1 ("[T]he Statute IC 35–33.5–1–1 through IC 35–33.5–5–6 as written [is] unconstitutionally vague, because the statute doesn't clearly define what conduct is prohibited and is not understandable by a person of ordinary intelligence.") (R. at 136.)[3]

■ When the validity of a statute is challenged, we begin with a " 'presumption of constitutionality.' " State v. Downey, 476 N.E.2d 121, 122 (Ind.1985) (quoting *Sidle v. Majors,* 264 Ind. 206, 209, 341 N.E.2d 763, 766 (1976)) (upholding the constitutionality of Indiana's dependant neglect statute under a void for vagueness challenge), *reh'g denied.* The burden to rebut this presumption is upon the challenger, and all reasonable doubts must be resolved in favor of the statute's constitutionality. *See id.*

---

**2.** Indiana Appellate Rule 4(A)(8) provides: "The Supreme Court shall have exclusive jurisdiction of ... [a]ppealable cases where a state or federal statute has been declared unconstitutional in whole or in part."

**3.** It is not clear from the order of dismissal (R. at 136–37) whether the trial court found the Act to be unconstitutionally vague under the United States Constitution, the Indiana Constitution, or both. Here, neither party has presented a separate argument based on the Indiana Constitution.

A statute will not be found unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct. *See id.* The statute "need only inform the individual of the generally proscribed conduct, [and] need not list with itemized exactitude each item of conduct prohibited." *Id.* Finally, " 'it is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand.' " *Davis v. State,* 476 N.E.2d 127, 130 (Ind.Ct.App. 1985) (quoting *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975)), *transfer denied.*

## I

Lombardo first contends that the Act is impermissibly vague because the statutory scheme under which he was charged is "contradictory as to the degree of culpability required." Appellee's Br. at 4.

We acknowledge that the Act is internally inconsistent: The highest degree of culpability—"intentional"—is used to define an "interception" under Indiana Code § 35–33.5–1–5, while a lesser degree of culpability—*"knowingly* or intentionally"—is included in defining the statutory crime under Indiana Code § 35–33.5–5–5. Nevertheless, " '[w]hen a statute can be construed to support its constitutionality, such construction must be adopted.' " *In re Tina T.,* 579 N.E.2d 48, 56 (Ind.1991)

(quoting *Miller v. State,* 517 N.E.2d 64, 71 (Ind.1987)).

Here, Lombardo does not claim that he acted with the lesser culpability of "knowingly";[4] instead, he broadly claims that "a person of ordinary intelligence [cannot] be said to have been given fair notice" as to what degree of culpability is required. Appellee's Br. at 5. We disagree and find that a person of ordinary intelligence would know, under any reasonable interpretation, that the act of wiring a tape recorder under a house to record secretly another's conversations is an "intentional" act clearly prohibited under the Act's current statutory scheme.

That being said, we accept the State's suggestion[5] to construe strictly the Indiana Wiretap Act in future cases to eliminate the lesser culpability of "knowingly," so that in charging and prosecuting individuals under Indiana Code § 35–33.5–5–5(b), the State will henceforth be required to prove intentional conduct. *Cf. State v. McGraw,* 480 N.E.2d 552, 553 (Ind.1985) (providing that penal statutes must be strictly construed against the State).

## II

Lombardo next contends that the Act is unconstitutionally vague because it "do[es] not outlaw all recordings but only those recordings accomplished by means of certain instruments, devices or equipment which are supposed to be, but never are, delineated except for two . . . machines

---

4. Indiana defines the different levels of culpability as follows:

(a) A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.

(c) A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

(d) Unless the statute defining the offense provides otherwise, if a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct.
Ind.Code § 35–41–2–2 (1993).

5. *See* Appellant's Reply Br. at 2 ("By eliminating the 'knowingly' culpability from the statute, no person of ordinary intelligence could fail to understand the statute as applying to intentional conduct, that is, intentional use of a recording device to intentionally intercept a communication.").

which do not apply in this instance." Appellee's Br. at 2.

For ease of review, we again reproduce the statutory definition of "interception:"

"Interception" means the intentional:

(1) recording of; or

(2) acquisition of the contents of;

a telephonic or telegraphic communication by a person other than a sender or receiver of that communication, without the consent of the sender or receiver, by means of *any instrument, device, or equipment under this article.* This term *includes* the intentional recording of communication through the use of a *computer or a FAX* (facsimile transmission) machine.

Ind.Code § 35–33.5–1–5 (1993) (emphases added).

Lombardo claims that a literal reading of the statute allows for someone lawfully to "intercept" a communication with a tape recorder because the Act only prohibits recordings obtained "by means of *any* instrument, device or equipment *under this article,*" Ind.Code 35–33.5–1–5 (emphases added), and the only two devices listed in the article are "a computer or a FAX," *id.*

■ A more reasoned interpretation is that the phrase "under this article" limits the definition of "interception" to an application under Indiana's Wiretap Act, as opposed to, say, an application under Title 6 of Indiana Code on taxation where the

term "interception" is used in a similar context. *See* Ind.Code 6–8.1–3–2.2(c) (1990) ("As used in this section, 'surveillance' means the monitoring of a person, place, or event by: (1) electronic *interception;* (2) overt or covert observations; (3) photography; or (4) the use of informants.") (emphasis added). Therefore, we adopt this logical construction and hold that an interception under the Act can be accomplished "by means of *any* instrument, device, or equipment."

We also find that an individual of ordinary intelligence—without the benefit of this analysis—could easily comprehend the Act to include a tape recorder, which is the most common device used to intercept telephonic communications.

### III

■ Lombardo lastly contends that the Act is unconstitutionally vague because it "incorporate[s] federal law as an exception but the federal law is so unclear on the issue of an exception for the marital residence that it makes the state law too vague." Appellee's Br. at 2.

His argument is essentially this: First, the Indiana Wiretap Act incorporates federal wiretap law.[6] Second, federal wiretap law includes case law and the federal circuits are split on whether the Federal Wiretap Act outlaws intercepting the telephone communications of one's spouse within the marital home.[7] Third, because

---

6. He draws this conclusion from the subsection of the Indiana Act that provides, "This section *does not apply* to a person who makes an interception authorized *under federal law.*" Ind. § 35–33.5–5–5(a) (emphases added).

7. Four federal circuits have held that the Federal Wiretap Act *does not* immunize interspousal wiretaps. *See Heggy v. Heggy,* 944 F.2d 1537, 1538 (10th Cir.1991) (holding that the Federal Wiretap Act "does apply to interspousal wiretapping within the marital home"), *cert. denied,* 503 U.S. 951, 112 S.Ct. 1514, 117 L.Ed.2d 651 (1992); *Kempf v. Kempf,* 868 F.2d 970, 973 (8th Cir.1989) (holding that "the conduct of a spouse in wiretapping the telephone communications of the other spouse within the marital home,

falls within [the Federal Wiretap Act's] purview"); *Pritchard v. Pritchard,* 732 F.2d 372, 374 (4th Cir.1984) (stating that there is no "indication in the statutory language or in the legislative history that Congress intended to imply an exception to facts involving interspousal wiretapping"); *United States v. Jones,* 542 F.2d 661, 673 (6th Cir.1976) (holding that "the plain language of [§ 2511] and the [the Federal Wiretap Act's] legislative history compels interpretation of the statute to include interspousal wiretaps").

Two federal circuits have held that Title III *does* immunize interspousal wiretaps. *See Simpson v. Simpson,* 490 F.2d 803, 805 (5th Cir.1974) ("The naked language of [the Federal Wiretap Act], by virtue of its inclusiveness,

of the conflict among the circuits, a person of common intelligence cannot know whether or not intercepting the telephone communications of one's spouse within the marital home is authorized under federal law. This, he concludes, renders the statute unconstitutionally vague, at least as applied to his situation.

We reject Lombardo's premise that the language of the Indiana Wiretap Act on which he relies—"[t]his section does not apply to a person who makes an interception authorized under federal law"—incorporates federal case law interpreting the Federal Wiretap Act into the Indiana Wiretap Act. Instead, we find that the provision serves to provide the exemption required by the Supremacy Clause for any wiretapping conducted by law enforcement under the federal act that would be prohibited under the Indiana Act.

Some background on the two statutes makes this clear. In 1968, Congress enacted the Federal Wiretap Act (Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510 *et seq.*). The Federal Wiretap Act authorized federal and state law enforcement officers to use wiretaps (for recording wire communications) and bugs (for recording oral communications) in criminal investigations pursuant to a properly issued court order administered in compliance with specific guidelines. *See* 18 U.S .C. §§ 2511–2519 (1988). While Congress did not preempt all state regulatory authority in this area, *see id.* § 2516(2) (implicitly authorizing states to adopt their own wiretap statutes),[8] the legislative history underlying the Federal Wiretap Act indicates that the drafters did intend to establish minimum privacy standards for any state statutes that would follow, *see* S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S. Code Cong. & Admin. News 2112, 2180, 2187 ("The State statute must meet the minimum standards reflected as a whole in the proposed chapter. The proposed provision [§ 2516(2) ] envisions that States would be free to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation.").

In 1990, the General Assembly passed the Indiana Wiretap Act (Pub.L. No. 161, 1990 Ind. Acts 2161 (codified as amended at Ind.Code §§ 35–33.5–1–1 through 35–33.5–5–6 (1998))), which provided for the "interception of telephonic or telegraphic communications relevant to the investigation or prosecution of felonies pertaining to the Indiana controlled substance statutes," H.B. 1093, 106th General Assembly, 2d Sess. (1990) (digest of bill).[9]

Unlike those states that essentially copied the language of the Federal Wiretap

---

reaches this case. However, we are of the opinion that Congress did not intend such a far-reaching result, one extending into areas normally left to states, those of the marital home and domestic conflicts."), *cert. denied,* 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974); *Anonymous v. Anonymous,* 558 F.2d 677, 679 (2d Cir.1977) (holding that the wiretap in question did not rise to the level of criminal conduct proscribed by the Federal Wiretap Act in that it was "a purely domestic conflict[,] a dispute between a wife and her ex-husband over the custody of their children[, and] a matter clearly to be handled by the state courts").

While the Seventh Circuit has yet to take a definitive position, it did identify this split of authority in *Scheib v. Grant,* 22 F.3d 149, 153 n. 2 (7th Cir.) (citing the same cases except *Anonymous*), *cert. denied,* 513 U.S. 929, 115 S.Ct. 320, 130 L.Ed.2d 280 (1994).

8. *See also* 18 U.S.C. § 2519(2) (requiring the principal prosecuting attorney for any political subdivision of a state that has a statute authorizing communications intercepts to submit to the Administrative Office of the United States Courts all specific information on intercepted wire, oral, or electronic communications).

9. Hoosier law enforcement has apparently only sparingly utilized Indiana's Wiretap Act since its passage in 1990. Only a handful of interception warrant reports have been filed with the Legislative Council pursuant to Indiana Code § 35–33.5–2–4, and the State Court Administration pursuant to Indiana Code § 35–33.5–2–5 and Criminal Rule 25.

Act,[10] and others that adopted the Federal Wiretap Act language with only minor changes,[11] Indiana's statutory scheme largely stands on its own. But there are important similarities between Indiana's Wiretap Act and the Federal Wiretap Act. Both provide criminal penalties for the unauthorized interception of a wire or electronic communication *without the consent of at least one of the participants.*[12] *See* Ind.Code § 35–33.5–1–5; 18 U.S.C. § 2511(2)(d). Indiana also follows the federal format in exempting certain entities and individuals—in addition to law enforcement—from the imposition of criminal and civil penalties. *Compare* 18 U.S.C. § 2511(2) (exempting switchboard operators, communications carrier personnel, FCC personnel, etc.), *with* Ind.Code § 35–33.5–1–1 (providing that the Act "does not apply to the ordinary course of business pertaining to the operation of a telephone or telegraph corporation"); *and id.* § 35–33.5–5–4 (providing journalists with an affirmative defense to civil liability in certain situations).

On the other hand, the Federal Wiretap Act also provided that states were "free to adopt more restrictive legislation," *see* S.Rep. No. 1097, 1968 U.S. Code Cong. & Admin. News at 2187 and, in fact, that is what Indiana lawmakers appear to have done. For example, the Indiana Wiretap Act does not appear to authorize law enforcement to "intercept" an oral communication through the use of eavesdropping equipment or bugs. But in adopting more restrictive legislation, our legislature could not ignore the potential for conflict under the Supremacy Clause[13] between Indiana's Wiretap Act, which criminalizes certain overly intrusive police activities,[14] and the Federal Wiretap Act, which authorizes *different* types of federal interceptions within Indiana's borders. Viewed in this manner, the legislature's exemption of interceptions "authorized under federal law" from the strictures of Indiana law amounts to no more than state wiretap law immunization of federal law enforcement surveillance activities within Indiana. *Cf. State v. Stockfleth,* 311 Or. 40, 804 P.2d 471, 477–78 (1991) (analyzing the state legislative history which identified the need to attempt to bring Oregon law into line with federal law in order to give law enforcement personnel a single set of guidelines and thus to remove the potential for a wiretap authorized in Oregon to be a violation of federal law).

In holding that the Indiana Wiretap Act does not incorporate by reference federal case law on intercepting the telephone communications of one's spouse within the

10. These states are: Florida, Hawaii, Minnesota, Nebraska, North Dakota, Tennessee, Virginia, West Virginia, and Wisconsin. *See* Stacy L. Mills, Note, *He Wouldn't Listen To Me ·Before, But Now ...: Interspousal Wiretapping and an Analysis of State Wiretapping Statutes,* 37 Brandeis L.J. 415, 427–28 & n. 116 (1998).

11. These states substitute the words "purposely," "knowingly," or "willfully" for "intentionally": Idaho, Louisiana, Missouri, New Hampshire, New Jersey, North Carolina, Ohio, and Oklahoma. *See id.* at 428 & n. 118.

12. Several states require the wiretapper to obtain the consent of all communicating parties to avoid punishment. *See Perry v. State,* 357 Md. 37, 741 A.2d 1162, 1197 & n. 3 (1999) (Cathell, J., dissenting) ("My research indicates that there are ten states, including Maryland, that require consent of all parties

to an intercepted telephone communication. They include Connecticut, Delaware, Florida, Illinois, Massachusetts, Michigan, Montana, New Hampshire and Pennsylvania. In addition, California and Washington require such consents in civil cases.") (citing Carol M. Bast, *What's Bugging You? Inconsistencies and ·Irrationalities of the Law of Eavesdropping,* 47 DePaul L.Rev. 837 (1998)); *see also* Mills, *supra* note 10, at 429 & n. 127 (listing the same states).

13. U.S. Const., art. VI, cl. 2.

14. *See* Ind.Code § 35–33.5–5–5(c) ("A person who, *by virtue of the person's employment or official capacity in the criminal justice system,* knowingly or intentionally uses or discloses the contents of an interception in violation of this article commits unlawful use or disclosure of an interception, a Class C felony.") (emphasis added).

marital home, we note that we have not been asked to express any opinion, and we do not, as to whether the wiretapping at issue in this case occurred in the marital home or as to whether there is a marital home exception implicit in the Indiana Wiretap Act.

### Conclusion

In summary, we conclude that: (1) the Indiana Wiretap Act is sufficiently clear and definite to warn a person of ordinary intelligence that the act of intentionally wiring a hidden tape recorder to document the private telephone conversations between a spouse and third parties, without their knowledge or permission, is prohibited under the Act; (2) the State will henceforth be required to prove intentional conduct in charging and prosecuting individuals under Indiana Code § 35–33.5–5–5(b); (3) an interception under the Act can be accomplished "by means of *any* instrument, device, or equipment"; (4) our legislature did not intend to directly incorporate the Federal Wiretap Act statutory or case law into Indiana's Act but instead meant to exempt from its provisions federal law enforcement surveillance activities within Indiana's borders.

The judgment of the trial court declaring the Indiana Wiretap Act unconstitutional is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.