Thedell POLK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A05–0002–CR–00055.

Court of Appeals of Indiana.

Dec. 11, 2000.

Samuel C. Hasler, Anderson, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge

### Case Summary

Appellant, Thedell A. Polk, appeals the trial court's decision to revoke his probation for carrying a weapon. Specifically, Polk argues that the police lacked reasonable suspicion to stop him and thus, the weapon seized from him during the stop was improperly admitted into evidence. We find the police had no reasonable suspicion to stop Polk and despite Polk's probationary status, reasonable suspicion was required. Therefore, the trial court should have suppressed the weapon seized. As the weapon was the only evidence of Polk violating the conditions of his probation, we reverse.

### Facts and Procedural History

The relevant facts reveal that on September 23, 1996, Polk was placed on probation for a period of eight years after pleading guilty to numerous charges.[1] His probation conditions provided that he could not possess, own or use any firearms. Record at 55.

On October 2, 1999, Officer Tim Gremes and Officer Mike Williams, both of the Anderson Police Department, were on patrol when they observed Polk walking in the area of Locust and 23rd Streets and when they passed by, he turned away from them. This was considered a high crime area where the officers had made many crack cocaine arrests. Record at 94. When Officer Gremes approached Polk, he appeared nervous and was sweating heavily. Officer Gremes then asked Polk to identify himself, which he did. Officer Gremes then asked Polk if he could pat down the outside of his clothes. Record at 90. Polk refused and when Officer Gremes started to ask why, Polk turned around and ran away.

The Officers chased him and eventually Officer Williams tackled Polk and arrested him. During the pursuit, Polk took out an object and threw it aside. This object was later determined to be a handgun. After he was arrested, Polk was read his Miranda rights. He waived his rights and told the officers that he found the gun in a field, that he was on probation and that he knew he was not supposed to have a gun. Record at 92. Before talking with Polk, the police officers did not know he was on probation. Record at 92.

A probation revocation hearing was held on November 1, 1999, and the trial court ordered Polk to be incarcerated for the remaining time of his previously suspended sentence.

### Discussion and Decision

 Polk contends that the original stop was improper and therefore, the

---

1. Polk pleaded guilty to Intimidation, a Class C felony; Auto Theft, a Class D felony; Theft, a Class D felony; and Possession of Marijuana, a Class A misdemeanor.

handgun that the officers discovered as a result should have been suppressed. In particular, Polk argues that Officer Gremes did not have reasonable suspicion to stop him or to request a "pat down ." Thus, the stop was unreasonable and any evidence gathered as a result should be suppressed. He argues that without this evidence, the court did not have sufficient evidence to revoke his probation. We agree.[2]

 The Fourth Amendment of the United States · Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." Searches without a warrant are reasonable only when the search is conducted under a well-known exception to the warrant requirement. *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993). One exception is when a person is detained for investigatory purposes. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An investigatory stop of a person is constitutionally permissible when the officer has reasonable suspicion of criminal activity. *Id.* Reasonable suspicion exists if there are specific and articulable facts which lead a police officer to believe that criminal activity has occurred or is about to occur. *See Kenner v. State*, 703 N.E.2d 1122, 1125 (Ind.Ct.App.1999) (citing *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), *trans. denied.* This determination is based upon the totality of the circumstances. *Bratcher v. State*, 661 N.E.2d 828, 831 (Ind.Ct.App.1996).

We have ruled consistently that the location of a defendant when stopped does not alone present reasonable suspicion to justify an investigatory stop. For example in a case remarkably similar to this case, we held that an officer lacked reasonable suspicion to make an investigatory stop where the defendant and a companion were standing in a high crime area and avoided eye contact with the officer. *Reeves v. State*, 666 N.E.2d 933, 936 (Ind.Ct.App. 1996). Likewise, a panel of this court has concluded that an officer lacked reasonable suspicion to conduct an investigatory stop of a defendant when he encountered the defendant on a farm lane that led to an area known to have been used to store marijuana. *Green v. State*, 719 N.E.2d 426, 429–30 (Ind.Ct.App.1999). Furthermore, our Supreme Court has determined that the presence of a defendant walking in a "high crime" area at 1:30 a.m. with a package does not rise to the level of reasonable suspicion. *Williams v. State*, 477 N.E.2d 96, 99 (Ind.1985), *reh'g denied.*

Here, the evidence shows that the police stopped Polk because of his location at the time of the stop. Polk was stopped because he was walking in a high crime area and turned away from the police as they passed him. Such circumstances do not rise to a reasonable suspicion to believe that criminal activity has or is about to occur. As a result, the police lacked reasonable suspicion to conduct an investigatory stop of Polk and the stop was unlawful.

Nonetheless, the State argues that Polk was on probation and because of his probationary status, no reasonable suspicion to stop him was required. The State argues that "because the determination that a condition of probation has been breached is not an adjudication of guilt, a defendant is not endowed with all the rights he possessed prior to his conviction." Appellee's Brief at 4.

 It is true that the supervision of probationers has been held to be a "special need," permitting the State to intrude on a probationer's privacy to a greater degree than a member · of the public at large. *Griffin v. Wisconsin*, 483 U.S. 868, 873,

---

2. Polk also argues that the trial court failed to consider alternatives to incarceration in violation of Article 1, Section 18 of the Indiana Constitution. Because we find the issue of reasonable suspicion to be dispositive, we need not address this issue.

107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). Because of this "special need" of operating a probation system, a departure from the normal warrant and probable cause requirements is justified. *Rivera v. State,* 667 N.E.2d 764, 766 (Ind.Ct.App.1996) (citing *Griffin,* 483 U.S. at 878, 107 S.Ct. 3164), *trans. denied.* Even then, this court has repeatedly ruled that a probationer is entitled to some limited protection of his or her privacy interest. *See Green,* 719 N.E.2d at 430; *Purdy v. State,* 708 N.E.2d 20, 23 (Ind.Ct.App.1999); *Rivera,* 667 N.E.2d at 767.

The reasons cited for not granting a probationer the full panoply of rights are threefold. First, a warrant requirement would interfere with the probation system because magistrates rather than probation officers would be supervising the probationer and the delay in obtaining a warrant for every search would make it difficult for probation officers to respond quickly. *Griffin,* 483 U.S. at 876, 107 S.Ct. 3164. Second, probation officers are concerned with the welfare of both the probationer and society, thereby reducing any potential abuses. *Id.* Finally, adhering to the procedural requirement of obtaining a warrant in the probation setting will redirect the probation officials limited personnel away from supervision and counseling. *Dulin v. State,* 346 N.E.2d 746, 750, 169 Ind.App. 211 (1976) (quoting *United States v. Allen,* 349 F.Supp. 749, 754 (N.D.Cal.1972)).

■ Accordingly, affording probationers lesser protections is predicated on the premise that probation officers, or police working with probation officers, are conducting searches connected to the enforcement of conditions of probation and not for normal law enforcement purposes. *See Purdy,* 708 N.E.2d 20; *Rivera,* 667 N.E.2d 764. However, when a search is not conducted in the regulatory system of probation enforcement, a probationer's normal privacy rights may not be stripped from him.

Here, the police officers were not investigating the enforcement of Polk's conditions of probation, nor were the police working with Polk's probation officer. In fact, they did not know that Polk was on probation until they arrested him. Record at 92. Because the search of Polk was not a search connected to probation . enforcement, reasonable suspicion was required for his detainment.

We note that the State cites our court's decision in *Plue v. State,* 721 N.E.2d 308 (Ind.Ct.App.1999), to support its argument that reasonable suspicion was not required to stop Polk. To the extent *Plue* holds that probationers are entitled to lesser privacy protection whether or not the police are enforcing the conditions of probation, we disagree. We do, however, note that the officer in *Plue* did have reasonable suspicion to stop Plue as the contraband seized was in plain view.

Consequently, because the officers lacked reasonable suspicion to stop Polk and because Polk's probationary status did not obviate the need for reasonable suspicion, the gun obtained during the improper stop should have been suppressed. Since the gun was the only evidence of Polk violating the terms of his probation, his probation should not have been revoked.

Judgment reversed.

SULLIVAN, J., and BAILEY, J., concur.