Robert J. MICHEAU, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 38A05–0710–CR–578.

Court of Appeals of Indiana.

Sept. 16, 2008.

Mark A. Delgado, Muncie, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Robert Micheau appeals his convictions for: Count I, dealing in methamphetamine as a class B felony;[1] Count II, possession of methamphetamine as a class D felony;[2] Count III, dealing in a sawed off shotgun

---

1. Ind.Code § 35–48–4–1.1 (Supp.2006).

2. Ind.Code § 35–48–4–6.1 (Supp.2006).

as a class D felony;[3] Count IV, possession of marijuana as a class A misdemeanor;[4] Count V, possession of chemical reagents or precursors with intent to manufacture methamphetamine while armed with a firearm as a class C felony;[5] and Count VI, attempted dealing in methamphetamine as a class A felony.[6] Micheau raises four issues, which we revise and restate as:

I. Whether the trial court abused its discretion by admitting the evidence obtained during the search;

II. Whether Ind.Code § 35–48–4–1.1(a)(2), which governs the offense of dealing in methamphetamine, is unconstitutionally vague;

III. Whether Micheau's convictions for Counts I, V, and VI violate the prohibition against double jeopardy and Ind.Code § 35–38–1–6; and

IV. Whether Micheau's convictions for Counts I, V, and VI violate the Proportionality Clause, Article I, Section 16 of the Indiana Constitution.

We affirm in part and vacate in part.

The relevant facts follow. Micheau was on parole in Indiana as a result of a marijuana conviction in Texas. In November 2002, Steve Montrose was assigned as Micheau's parole agent. During Montrose's initial interview with Micheau, Montrose and Micheau discussed the Texas and Indiana parole rules. Micheau told Montrose that he was familiar with the rules because he had previously been on parole in Indiana.

On May 20 or 21, 2007, Montrose received an anonymous phone call that Micheau might be manufacturing and selling methamphetamine. Montrose contacted the Jay County Sheriff's Department and was informed that the Sheriff's Department had received similar information. Montrose corroborated the information with the prosecutor's office. Montrose went to the Jay County Sheriff's Department and asked for assistance in doing a "home visit" for safety reasons and "if something is found we can stop my process and start a state investigation or a county investigation." Suppression Transcript at 14. Montrose also requested police dogs.

Montrose and three or four other officers went to Micheau's residence. Micheau's mother answered the door, and one of the officers explained the situation and told her that they wanted to see where Micheau was staying. Micheau's mother showed them his room. Montrose and one of the police officers found a crossbow with bolts, some ammunition, and a combat knife in plain view.

Micheau's mother told Montrose and the officers that Micheau also used the garage and stayed in a blue camper, which was in the front yard. Jay County Sheriff's Detective David Tarter approached Micheau's mother and asked her for consent to search the buildings. Micheau's mother consented to the search. Sergeant Schlechty of the Portland Police Department ran his K–9 dog around the camper and garage, and the dog indicated the presence of narcotics in the camper and the garage. After the dog indicated the presence of narcotics, Montrose told everyone to "stop their activities and go get a warrant." *Id.* at 18, 36. Montrose then left. Detective Tarter and another officer applied for a search warrant for the camp-

---

**3.** Ind.Code § 35–47–5–4.1 (2004).

**4.** Ind.Code § 35–48–4–11 (2004).

**5.** Ind.Code § 35–48–4–14.5 (Supp.2006).

**6.** Ind.Code §§ 35–48–4–1.1 (Supp.2006); 35–41–5–1 (2004).

er and the garage, which the trial court granted.

As a result of the subsequent search, the police found the following items that are commonly used in the production of methamphetamine: pseudoephedrine, ephedrine, a strainer, a coffee grinder, hydrogen peroxide, matchbook striker plates, coffee filters, a container of lye, acetone, fuel, isopropyl alcohol, a bottle of acid, salt, glass jars, a plastic bag with white powder residue, a mirror with white powder residue, a propane cylinder connected to a burner, an electric heat source, a "stir spatula," pH strips, a pH test kit, an altered bottle, a stick with white residue, a modified turkey baster, and electronic scales. *Id.* at 123. The police found a sawed off shotgun in a yard cart. Inside the camper, the police found a semi-automatic handgun and a Taurus 9 millimeter handgun. The police found a plastic bag containing a white substance that was later determined to be 0.48 grams of methamphetamine. Testing also revealed liquid in two bottles contained methamphetamine. The police also found a police scanner and a camera located inside a can that was pointed towards the driveway.

The State charged Micheau with: Count I, dealing in methamphetamine as a class B felony; Count II, possession of methamphetamine as a class D felony; Count III, dealing in a sawed off shotgun as a class D felony; Count IV, possession of marijuana as a class D felony; and Count V, possession of chemical reagents or precursors with intent to manufacture methamphetamine while armed with a firearm as a class C felony. The State sought to enhance Count I because Micheau possessed a sawed off shotgun.[7] The State amended Count I to be dealing in methamphetamine as a class A felony and amended the infor-

mation to add Count VI, attempted dealing in methamphetamine as a class A felony.

On August 23, 2007, Micheau filed a motion to suppress evidence seized from his residence. Micheau argued that "[t]he entry into and search of [his] home and the subsequent seizure of the items located in [his] residence was without probable cause, without a warrant, without a valid consent, and without any exigent circumstances." Appellant's Appendix at 121. After a hearing, the trial court denied Micheau's motion to suppress.

The jury found Micheau guilty of Count I, dealing in methamphetamine as a class B felony; Count II, possession of methamphetamine as a class D felony; Count III, dealing in a sawed off shotgun as a class D felony; Count IV, possession of marijuana as a class A misdemeanor; Count V, possession of chemical reagents or precursors with intent to manufacture a controlled substance as a class C felony; and Count VI, attempted dealing in methamphetamine as a class A felony. The jury also found, with respect to Counts I and VI, that Micheau had committed the enhancement of knowingly or intentionally possessing a sawed off shotgun.

The trial court sentenced Micheau to eighteen years for Count I enhanced by ten years due to the possession of the sawed off shotgun; three years for Count II, three years for Count III, one year for Count IV, six years for Count V, and forty years for Count VI enhanced by ten years due to the possession of the sawed off shotgun. The trial court ordered that the sentences be served concurrently for an aggregate sentence of fifty years.

I.

The first issue is whether the trial court abused its discretion by admit-

7. Ind.Code § 35–50–2–13 (Supp.2005).

ting the evidence obtained during the search. We review the trial court's ruling on the admission of evidence for an abuse of discretion. *Noojin v. State*, 730 N.E.2d 672, 676 (Ind.2000). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind.1997), *reh'g denied*. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind.Ct.App. 1999), *reh'g denied, trans. denied*.

Micheau argues that the trial court abused its discretion by admitting the evidence obtained during the search because the search was "an investigatory search that was under the guise of a probationary search." [8] Appellant's Brief at 8.

■■■ The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.... " The Fourteenth Amendment makes this protection applicable to actions by state officials. *Allen v. State*, 743 N.E.2d 1222, 1227 (Ind.Ct. App.2001) (relying on *Elkins v. United States*, 364 U.S. 206, 213, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)), *reh'g denied*. Generally, searches should be conducted pursuant to a warrant supported by probable cause. *Id.* (relying on *Purdy v. State*, 708 N.E.2d 20, 22 (Ind.Ct.App.1999)). "However, the United States Supreme Court has determined that '[a] State's operation

of a probation system ... presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements.' " *Id.* (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873–74, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)).

■■■ "This court has held that a probationer is entitled to limited protection of his privacy interests." *Allen*, 743 N.E.2d at 1227 (relying on *Polk v. State*, 739 N.E.2d 666, 669 (Ind.Ct.App.2000)). "Indeed, the Fourth Amendment requires that a search of a probationer's home be reasonable." *Id.* (relying on *Purdy*, 708 N.E.2d at 23; *Griffin*, 483 U.S. at 875, 107 S.Ct. 3164, 97 L.Ed.2d 709). "[A]ffording probationers lesser protections is predicated on the premise that probation officers, or police working with probation officers, are conducting searches connected to the enforcement of conditions of probation and not for normal law enforcement purposes." *Id.* at 1227–1228 (quoting *Polk*, 739 N.E.2d at 669). When a search is not conducted within the regulatory scheme of probation enforcement, a probationer's normal privacy rights cannot be stripped from him. *Id.* at 1228. The State must demonstrate that a warrantless search of a probationer was a true probationary search and not an investigatory search. *Id.* A probation search cannot be a mere subterfuge enabling the police to avoid obtaining a search warrant. *Id.* Thus, courts must conduct a bifurcated inquiry. *Id.* First, a court should determine whether the search was indeed a parole or probation search.

---

**8.** At the end of Micheau's argument, he mentions that the search was "unreasonable and violates Article I, Section 11 of the Indiana Constitution." Appellant's Brief at 8. However, Micheau fails to provide an independent analysis of Article I, Section 11 of the Indiana Constitution; rather his focus is on the Fourth Amendment of the United States Constitution. Failure to make a cogent argument

under Article I, Section 11 of the Indiana Constitution constitutes waiver of the issue on appeal. *See* Ind. Appellate Rule 46(A)(8); *Abel v. State*, 773 N.E.2d 276, 278 n. 1 (Ind. 2002) (holding that because the defendant presented no authority or independent analysis supporting a separate standard under the state constitution, any state constitutional claim is waived).

*Id.* If the search was not conducted within the regulatory scheme of parole/probation enforcement, then it will be subject to the usual requirement that a warrant supported by probable cause be obtained. *Id.* If the search is a true parole/probation search, then a court must determine whether the search was reasonable. *Id.*

The record reveals that Montrose, Micheau's parole officer, received an anonymous call indicating that Montrose may be manufacturing and selling methamphetamine. Montrose contacted the Jay County Sheriff's Department and was informed that the Sheriff's Department had received similar information. Montrose corroborated the information with the prosecutor's office. Montrose went to the Jay County Sheriff's Department and asked for assistance in doing a "home visit" for safety reasons and "if something is found we can stop my process and start a state investigation or a county investigation." Suppression Transcript at 14. Based on the record, we conclude that the initial search of the residence was a true parole search and that the search was reasonable.[9] *See, e.g., Allen,* 743 N.E.2d at 1228–1229 (agreeing with the trial court's determination that the search was a true "probation" search conducted pursuant to Allen's parole agreement and that the search was reasonable). Consequently, the trial court did not abuse its discretion by admitting the evidence obtained during the search.

## II.

 The next issue is whether Ind. Code § 35–48–4–1.1(a)(2), which governs the offense of dealing in methamphetamine, is unconstitutionally vague. Whether a statute is constitutional on its face is a question of law. *State v. Moss–*

*Dwyer,* 686 N.E.2d 109, 110 (Ind.1997). Where the issue presented on appeal is a pure question of law, we review the matter de novo. *Id.* When the validity of a statute is challenged, we begin with a presumption of constitutionality. *State v. Lombardo,* 738 N.E.2d 653, 655 (Ind.2000). The burden to rebut this presumption is upon the challenger, and all reasonable doubts must be resolved in favor of the statute's constitutionality. *Id.*

 A statute will not be found unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct. *Id.* at 656. The statute need only inform the individual of the generally proscribed conduct and need not list with exactitude each item of prohibited conduct. *Id.* Finally, it is well established that vagueness challenges to statutes that do not involve First Amendment freedoms must be examined in light of the facts of the case at hand. *Id.*

Micheau argues that "[t]he statute provides no notice of what article or substance it is a crime to possess." Appellant's Brief at 9. Micheau also argues that "[t]he way I.C. 35–48–4–1.1(a)(2) is written, it is impossible to determine what items you might possess that would be prohibited. The wording begs the question, 'Possess WHAT?' " *Id.* at 13. Ind.Code § 35–48–4–1.1, which governs dealing in methamphetamine, provides:

(a) A person who:

\* \* \* \* \* \*

(2) possesses, with intent to:

(A) manufacture;

(B) finance the manufacture of;

(C) deliver; or

---

**9.** We note that Micheau does not challenge his mother's consent to search the property or

the subsequent search warrant.

(D) finance the delivery of;
methamphetamine, pure or adulterated;

commits dealing in methamphetamine, a Class B felony, except as provided in subsection (b).

The State argues that "[u]nder the grammatical structure of the sentence, methamphetamine is the object that receives the action of the verb 'possess.' In other words, the statute makes it a crime to possess methamphetamine with the intent to manufacture methamphetamine." Appellee's Brief at 16. We agree with the State. The statute does adequately advise the public of the proscribed conduct, namely possessing methamphetamine with the intent to manufacture methamphetamine, and we conclude that the statute is not unconstitutionally vague.[10] *See, e.g., Polk v. State*, 683 N.E.2d 567, 572 (Ind.1997) ("The school-zone enhancement, far from being unconstitutionally vague, quite clearly communicates to drug offenders a bright line rule as to what conduct is proscribed."); *Manigault v. State*, 881 N.E.2d 679, 688 (Ind.Ct.App.2008) (holding that Ind.Code § 35–48–4–6 clearly and unambiguously puts any person of ordinary intelligence on notice that possessing cocaine "within one thousand feet" of any school property, public park, family housing complex or youth program is a class B felony).

### III.

The next issue is whether Micheau's convictions for Counts I, V, and VI violate the prohibition against double jeopardy and Ind.Code § 35–38–1–6. Micheau challenges his convictions on both double jeopardy and statutory grounds.

### A. *Counts I and VI*

#### 1. *Ind.Code § 35–38–1–6*

Micheau appears to argue that his conviction for Count VI, attempted dealing in methamphetamine as a class A felony, is a lesser included offense of Count I, dealing in methamphetamine as a class B felony. Micheau argues that "[i]n the present case, possession of Iodine and hydrogen peroxide (as alleged in count 6, but no items are even alleged in Amended Count 1) as reagents or precursors is necessarily included in Micheau's conviction for dealing in methamphetamine."[11] Appellant's Brief at 18.

"Indiana Code § 35–38–1–6 reinforces [the rule in Indiana's Double Jeopardy Clause], forbidding a trial court from sentencing a defendant for an offense and a lesser-included offense charged in separate counts." *Hopkins v. State*, 759 N.E.2d 633, 639 (Ind.2001). Indiana Code § 35–38–1–6 provides that "[w]henever: (1) a

---

**10.** The State points out that "[t]he possession of enumerated precursors with the intent to manufacture methamphetamine is prohibited by Indiana Code Section 35–48–4–14.5(e)." Appellee's Brief at 17. Ind.Code § 35–48–4–14.5(e) provides that "[a] person who possesses two (2) or more chemical reagents or precursors with the intent to manufacture a controlled substance commits a Class D felony."

**11.** Count VI did not specifically allege that Micheau possessed iodine and hydrogen peroxide. Rather, the charging information for Count VI stated, in part, "Micheau did attempt to commit the crime of Dealing in Methamphetamine, a class A Felony, by

knowingly possessing enough precursors and equipment to produce more than three grams of Methamphetamine, which said conduct constituted a substantial step toward the commission of the crime of Dealing in Methamphetamine, a class A felony...." Appellant's Appendix at 103. The final jury instruction for Count VI stated, in part, that "the State must prove ... [Micheau] ... knowingly possess[ed] enough precursors and equipment to produce more than three grams of Methamphetamine." *Id.* at 165–166. Another final jury instruction defined "[c]hemical reagents or precursors." *Id.* at 166.

defendant is charged with an offense and an included offense in separate counts; and (2) the defendant is found guilty of both counts; judgment and sentence may not be entered against the defendant for the included offense." Ind.Code § 35–41–1–16 provides:

 "Included offense" means an offense that:

(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

(2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

"A lesser included offense is necessarily included within the greater offense if it is impossible to commit the greater offense without first having committed the lesser." *Zachary v. State*, 469 N.E.2d 744, 749 (Ind.1984). "If each offense is established by proof of an element not contained in the other, Indiana Code § 35–38–1–6 does not preclude conviction and sentence for both offenses." *Ingram v. State*, 718 N.E.2d 379, 381 (Ind.1999). "If the evidence indicates that one crime is independent of another crime, it is not an included of-

fense." *Wilhelmus v. State*, 824 N.E.2d 405, 416 (Ind.Ct.App.2005) (relying on *Ingram*, 718 N.E.2d at 381). Thus, whether an offense is included in another within the meaning of Section 35–38–1–6 requires careful examination of the facts and circumstances of each particular case. *Iddings v. State*, 772 N.E.2d 1006, 1017 (Ind. Ct.App.2002), *trans. denied.*

To the extent that Micheau suggests that Count VI is a lesser included offense of Count I, we disagree. Ind.Code § 35–48–4–1.1, which governs dealing in methamphetamine, provides:

(a) A person who:

(1) knowingly or intentionally:

(A) manufactures;

\* \* \* \* \* \*

methamphetamine, pure or adulterated; or

(2) possesses, with intent to:

(A) manufacture;

\* \* \* \* \* \*

methamphetamine, pure or adulterated; commits dealing in methamphetamine, a Class B felony, except as provided in subsection (b).

(b) The offense is a Class A felony if:

(1) the amount of the drug involved weighs three (3) grams or more;

\* \* \* \* \* \*

Count I was based upon section (a)(2), which requires possession of methamphetamine with the intent to manufacture.[12]

12. The final jury instruction for Count I stated:

> To convict the defendant of *Dealing in Methamphetamine*, as alleged in Ct.I, the State must prove each of the following elements:
> 1. On or about May 24, 2007,
> 2. The defendant,
> 3. Knowingly

4. Possessed, with the intent to manufacture,
5. Methamphetamine
If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty. If the State proved each of these elements beyond a reasonable doubt, you should find the defendant guilty of Ct. I—Dealing in Methamphetamine, *a Class B Felony*, which is a

Count VI was based upon attempting to manufacture methamphetamine, which is found in section (a)(1).[13]

We find *Wilhelmus v. State*, 824 N.E.2d 405 (Ind.Ct.App.2005), instructive. In *Wilhelmus*, this court addressed whether the trial court violated Ind.Code § 35–38–1–6 by entering judgments of conviction and sentences on both attempting to manufacture and manufacturing methamphetamine. *Id.* at 410. The court noted that "the evidence presented by the State reasonably leads to the conclusion that Wilhelmus had already created methamphetamine in the amount of three or more grams," and "[t]he State presented separate evidence that indicated that Wilhelmus was making additional methamphetamine, but the process had not yet been completed." *Id.* at 416–417. The court concluded that the evidence permitted the "reasonable conclusion that Wilhelmus committed two independent offenses for which he may be separately punished without offending Indiana Code Section 35–38–

1–6," and that "the attempt charge is not a lesser included offense and will not be vacated." *Id.* at 417.

Here, as in *Wilhelmus*, the State presented evidence that numerous items commonly used in the production of methamphetamine and .48 grams of methamphetamine were found on Micheau's residence. This evidence supported the conviction for Count I, dealing in methamphetamine as a class B felony. The State also presented evidence that the police found 12.96 grams of ephedrine and pseudoephedrine, and witnesses for the prosecution testified that this amount could yield at least three grams of methamphetamine. This evidence supported the conviction for Count VI, attempted dealing in methamphetamine as a class A felony. Because the evidence permits the reasonable conclusion that two independent offenses were committed for which Micheau could be separately punished, we conclude that, under the circumstances,

lesser included offense of that charged in Ct. 1.
Appellant's Appendix at 164.

**13.** We note that the charging information for Count VI cites Ind.Code § 35–48–4–1.1(a)(2) instead of section (a)(1). However, the allegation in the charging information relates to section (a)(1) because it alleges that "Micheau did attempt to commit the crime of Dealing in Methamphetamine, a class à Felony, by knowingly possessing enough precursors and equipment *to produce* more than three grams of Methamphetamine, which said conduct constituted a substantial step toward the commission of the crime of Dealing in Methamphetamine, a class A Felony." Appellant's Appendix at 103 (emphasis added). "It has long been held that it is the allegation in the body of the information that defines the crime and not the cited statute." *Woodcox v. State*, 591 N.E.2d 1019, 1025 (Ind.1992), *abrogated* on *other grounds* by *Richardson v. State*, 717 N.E.2d 32 (Ind.1999). Further, the final jury instruction for Count VI relates to section (a)(1) and states:

To convict the defendant of *Attempted Dealing in Methamphetamine, a Class A felony*, as alleged in Ct. VI, the State must prove each of the following elements:
1. On or about May 24, 2007,
2. The Defendant
3. With intent to manufacture methamphetamine, pure or adulterated, in an amount of three grams or more.
4. Did knowingly possess enough precursors and equipment *to produce* more than three grams of Methamphetamine.
Which was conduct constituting a substantial step toward the commission of the crime of Dealing in Methamphetamine, a Class A Felony.
If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty. If the State proved each of these elements beyond a reasonable doubt, you should find the defendant guilty of Ct.VI—Attempted Dealing in Methamphetamine, a Class A Felony.
Appellant's Appendix at 165–166 (emphasis added).

Count VI, the attempt charge, is not a lesser included offense of Count I, dealing in methamphetamine. *See, e.g., Wilhelmus*, 824 N.E.2d at 417; *see also Scott v. State*, 803 N.E.2d 1231, 1240 (Ind.Ct.App. 2004) (holding that the possession of chemical precursors with intent to manufacture methamphetamine charge was not a lesser included offense of dealing in methamphetamine by manufacturing charge); *Floyd v. State*, 791 N.E.2d 206, 213 (Ind.Ct.App.2003) (holding that the evidence permitted the reasonable conclusion that the defendant committed two independent offenses for which he may be separately punished), *trans. denied; Iddings*, 772 N.E.2d at 1017 ("Under these particular circumstances, we cannot say Iddings' possession of chemical precursors of methamphetamine was necessarily a lesser included offense of manufacturing methamphetamine because the evidence permits the reasonable conclusion that two independent offenses were committed for which Iddings could be separately punished.").[14]

2. *Double Jeopardy*

■■■ Micheau also argues that convictions on Count I and Count VI constitute double jeopardy. The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. "Indiana's Double Jeopardy Clause ...

prevent[s] the State from being able to proceed against a person twice for the same criminal transgression." *Hopkins*, 759 N.E.2d at 639 (Ind.2001) (quoting *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999)). The Indiana Supreme Court has held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson*, 717 N.E.2d at 49.

■■■ "An offense is the same as another under the actual evidence test when there is a reasonable possibility that the evidence used by the fact-finder to establish the essential elements of one offense may have been used to establish the essential elements of a second challenged offense." *Richardson*, 717 N.E.2d at 53. However, the Indiana Supreme Court clarified this test in *Spivey v. State*, where it held that the test is not whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish one of the essential elements of a second challenged offense; rather, the test is whether the evidentiary facts establishing the essential

---

**14.** Micheau cites *Robertson v. State*, 877 N.E.2d 507 (Ind.Ct.App.2007), *reh'g denied*, and *Moore v. State*, 869 N.E.2d 489 (Ind.Ct. App.2007). We find these cases distinguishable. In *Robertson,* the court concluded the defendant's conviction for possession of chemical reagents or precursors with intent to manufacture was included in the defendant's conviction for dealing when "there was no finished methamphetamine product found." 877 N.E.2d at 518. In *Moore,* the court held that a count of possession of anhydrous ammonia and a count of possession of reagents or precursors were lesser included offenses of dealing in methamphetamine because there was no evidence of independent offenses. 869 N.E.2d at 492–493. While the police in *Moore* recovered an "active methamphetamine solution," on appeal "[b]oth parties agree[d] that for methamphetamine to have been manufactured, [the defendant] would still have had to extract the methamphetamine from the substance found in the pitcher and then allowed it to dry." *Id.* at 491–492. Unlike in *Robertson* and *Moore,* here, as in *Wilhelmus* and *Iddings,* the record reveals that finished methamphetamine was found.

elements of one offense also establish all of the elements of a second offense. *Spivey v. State,* 761 N.E.2d 831, 833 (Ind.2002). If the evidentiary facts establishing one offense establish only one or several, but not all, of the essential elements of the second offense, there is no double jeopardy violation. *Id.*

■ To the extent that Micheau suggests that Count I and Count VI violate the actual evidence test, we will address the issue. "To succeed in his claim of double jeopardy under the *Richardson* actual evidence test, the defendant must demonstrate a reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of both robbery and confinement." *Hopkins,* 759 N.E.2d at 640. "Application of the actual evidence test requires us to identify the essential elements of each challenged crime and to evaluate the evidence from the jury's perspective, considering where relevant the jury instructions, argument of counsel, and other factors that may have guided the jury's determination." *Lamagna v. State,* 776 N.E.2d 955, 959 (Ind.Ct. App.2002). "[D]ouble jeopardy under this test will be found only when it is reasonably possible that the jury used the same evidence to establish two offenses, not when that possibility is speculative or remote." *Hopkins,* 759 N.E.2d at 640. The possibility is speculative and remote "and therefore not reasonable when finding no sufficiently substantial likelihood that the jury used the same evidentiary facts to establish the essential elements of two offenses." *Id.*

As previously mentioned, Count I requires proof of possession of methamphetamine with the intent to manufacture methamphetamine, and Count VI requires proof of attempting to manufacture more than three grams of methamphetamine. The State presented evidence that numerous items commonly used in the production of methamphetamine and .48 grams of methamphetamine were found on Micheau's residence. The State also presented evidence that the police also found 12.96 grams of ephedrine and pseudoephedrine, and witnesses for the prosecution testified that this amount could yield at least three grams of methamphetamine. Further, during closing argument, the prosecutor stated:

> There is a small amount of meth (inaudible) 0.48 grams. Basically a (inaudible). Half of a gram of methamphetamine that was found as a final product. It was found in the blue camper. We also had items that were analyzed that indicated that there was iodine, a precursor. We also had a lab analysis not only of the iodine but also of the pseudoephedrine, a precursor that came from the camper. Now you also heard that there was from the State lab person as far [sic] the 12.98 12.96 (inaudible) grams.... It was interesting to note that there were different brands, different types but one thing they had in common was they held the pseudoephedrine, ephedrine, one of the other (inaudible) pseudoephedrine which is the precursor necessary and the primary one necessary to make what? To make methamphetamine She further testified that this product of 47 percent efficiency rate would equal I think six grams. I think 27 percent was down to three grams.... Based upon these factors she believed that the production capability of this, potential, was more than three grams. Three grams or more or more than three grams. Now you're going to be faced with questions. Ok, so what. What does that mean. How (inaudible) apply (inaudible). (Inaudible) primarily applies to count 6. The attempt. So that attempt, the evidence is sufficient there to find him guilty of what? Running a

lab. Running a lab to produce what? More than three grams of methamphetamine.

Trial Transcript at 360–361.

Based on the evidence presented at trial and the prosecutor's closing argument, we conclude that the State distinguished and set forth independent evidence of Count I and Count VI. Thus, we cannot say that Micheau's convictions for Count I and Count VI violate Indiana's Double Jeopardy Clause. *See, e.g., Storey v. State,* 875 N.E.2d 243, 250 (Ind.Ct.App.2007) (holding that the State "carefully parsed the evidence" and "[i]n doing so, the State set forth independent evidence that Storey (1) possessed methamphetamine in excess of three grams with the intent to deliver and (2) manufactured methamphetamine in excess of three grams" and the defendant's convictions did not violate double jeopardy), *trans. denied; cf. Caron v. State,* 824 N.E.2d 745, 753–754, 754 n. 6, 754 n. 7 (Ind.Ct.App.2005) (holding that there was at least a reasonable possibility that the jury used the same evidence to establish the essential elements of dealing in methamphetamine by manufacturing and dealing in methamphetamine by possession when the State failed to parse the evidence at trial, presented evidence of a completed process and an amount of finished product to establish the manufacturing offense, and did not focus on or attempt to develop the evidence regarding the unfinished, second batch of methamphetamine), *trans. denied.*

B. *Counts v. and VI*

 We next address whether Count V is a lesser included offense of Count VI. To the extent that Micheau suggests that Count V is a lesser included offense of Count VI, the State "agrees that Count V is a lesser-included offense for double jeopardy purposes as to Count VI." Appellee's Brief at 22. Because the State concedes that Count V, possession of chemical reagents or precursors with intent to manufacture methamphetamine while armed with a firearm as a class C felony, is a lesser included offense of Count VI, attempted dealing in methamphetamine as a class A felony, we order that the conviction and sentence for Count V be vacated.[15] *See Hardister v. State,* 849 N.E.2d 563, 575 (Ind.2006) (concluding that "the crime of Class C felony possession of cocaine and a firearm is a lesser included offense of Class A felony dealing").

C. *Counts I and II*

 We address another issue sua sponte. Micheau was convicted of both Count I, dealing in methamphetamine as a class B felony, and Count II, possession of methamphetamine as a class D felony. Our review of the record indicates that the .48 grams of methamphetamine serves as the basis for both Counts I and II. We conclude that Count II, possession of methamphetamine as a class D felony, is a lesser included offense of Count I, dealing in methamphetamine. *See Hardister,* 849 N.E.2d at 576 (holding that simple possession of cocaine is a lesser included offense of dealing as a class B felony). Because Count II is a lesser included offense of Count I, we order that the conviction and sentence for Count II be vacated. *See Mason v. State,* 532 N.E.2d 1169, 1172 (Ind.1989) (raising the issue sua sponte and ordering that the possession conviction be vacated because it was a lesser included offense of dealing) *cert. denied,* 490 U.S. 1049, 109 S.Ct. 1960, 104 L.Ed.2d 428 (1989); *Thurman v. State,* 602 N.E.2d 548,

---

**15.** Because we vacate Count V, we need not address whether Count V is a lesser included offense of Count I.

554 (Ind.Ct.App.1992) ("We sua sponte address the fact that Thurman was convicted of and sentenced for both dealing in cocaine and possession of cocaine. Possession of cocaine is an inherently included lesser offense of dealing in cocaine and imposing sentence for both offenses violates Thurman's right against double jeopardy.... Accordingly, the sentence for possession of cocaine must be vacated."), *trans. denied.*

## IV.

 The next issue is whether Micheau's convictions for Count I, dealing in methamphetamine as a class B felony, and Count VI attempted dealing in methamphetamine as a class A felony, violate the Proportionality Clause, Article I, Section 16 of the Indiana Constitution, which provides that "[a]ll penalties shall be proportioned to the nature of the offense."[16] With regard to the Proportionality Clause, the Indiana Supreme Court has held that a finding of unconstitutionality should be reserved for "penalties so disproportionate to the nature of the offense as to amount to 'clear constitutional infirmity' sufficient to overcome the 'presumption of constitutionality' afforded to legislative decisions about penalties." *State v. Moss–Dwyer,* 686 N.E.2d 109, 112 (Ind.1997) (quoting *Steelman v. State,* 602 N.E.2d 152, 160 (Ind.Ct.App.1992); *Person v. State,* 661 N.E.2d 587, 592 (Ind.Ct.App.1996), *trans. denied* ).

Micheau argues that "[i]f this Court should determine that there is some way to insert items that are illegal to possess into Ind.Code § 35–48–4–1.1(a)(2), then the offenses outlined in Counts 1 and 6 allege the same crime as Count 5." Appellant's Brief at 16. Micheau then argues that "[t]hese two criminal statutes create disproportionate penalties for the same offense in violation of the Proportionality Clause of our Indiana Constitution." *Id.*

To the extent that Micheau suggests that Count I, dealing in methamphetamine as a class B felony, and Count VI, attempted dealing in methamphetamine as a class A felony, violate the Proportionality Clause because they constitute the same crime, we have already held that the evidence permitted the reasonable conclusion that two independent offenses were committed and that Count VI was not a lesser included offense of Count I. *See supra* Part III.A. Further, Micheau's conviction for Count I did not require that the amount of the drug involved weigh three grams or more. Thus, we conclude that Micheau's sentences for Count I and Count VI do not violate the Proportionality Clause. *See Coleman v. State,* 588 N.E.2d 1335, 1339 (Ind.Ct.App.1992) (holding that an enhancement for dealing when the amount of the drug involved weighs three grams or more does not violate the proportionality requirement of Article I, section 16), *trans. denied.*

For the foregoing reasons, we affirm Micheau's convictions for Count I, dealing in methamphetamine as a class B felony; Count III, dealing in a sawed off shotgun as a class D felony; Count IV, possession of marijuana as a class A misdemeanor; and Count VI, attempted dealing in methamphetamine as a class A felony. We vacate the convictions and sentences entered for Count II, possession of methamphetamine as a class D felony, and Count V, possession of chemical reagents or precursors with intent to manufacture a controlled substance as a class C felony.

Affirmed in part and vacated in part.

---

**16.** Micheau also mentions Count V in his discussion of this issue. *See* Appellant's Brief at 15–17. We need not address Count V because we have concluded that his conviction for Count V should be vacated. *See supra* Part III.B.

NAJAM, J. concurs.

ROBB, J. concurs with separate concurring opinion.

ROBB, Judge, concurring.

I concur in the majority opinion, but write separately as to the admission of evidence issue only to note that there can be a murky line between a parole search and an investigatory search, because the same conduct may be both a parole violation and a new crime. It is even more murky in this case, where both Montrose, as Micheau's parole officer, and the Jay County Sheriff's Department had received information regarding Micheau's alleged manufacture of methamphetamine and the parole office and the police may have had concomitant investigations underway. However, because this search was initiated by Montrose, because Montrose testified at the suppression hearing that there were certain procedures he was required to follow when conducting a search, and because there was no evidence or testimony to suggest that Montrose did not follow those procedures in conducting this search, *cf. Bonner v. State,* 776 N.E.2d 1244, 1249 (Ind.Ct.App.2002) ("If the search was not conducted within the regulatory scheme of probation enforcement, then it will be subject to the usual requirement that a warrant supported by probable cause be obtained."), *trans. denied,* I agree that this was a parole search and that the trial court did not err in admitting the evidence obtained as a result of the search.